STATE of North Dakota, Plaintiff and Appellee,

v.

Adam John DILGER, Defendant and Appellant.

Cr. No. 902.

Supreme Court of North Dakota.

Aug. 18, 1983.

Robert G. Hoy, States Atty., Fargo, for plaintiff and appellee.

Kraemer, Beauchene & Associates, Fargo, for defendant and appellant; argued by Frederick D. Kraemer, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by the defendant, Adam John Dilger [Dilger] from a judgment entered upon a jury verdict finding him guilty of the offense of murder and from an order denying his motion for a new trial. We affirm.

At approximately 5:00 p.m., November 18, 1981, Dilger was drinking at the bar of the Catholic War Veterans Club in Fargo, North Dakota. Approximately two or three hours later, Katherine Hall, with whom Dilger shared an apartment in a house owned by Hall next door to the Club, entered the bar. After an argument occurred between Dilger and Hall, Hall left and returned a few minutes later with clothing and other items belonging to Dilger. After making two trips carrying in items belonging to Dilger, Hall left the bar at approximately 9:00 p.m. Persons in the bar began teasing Dilger about having to sleep in the bar's kitchen. Dilger then left the bar. When he returned about fifteen to twenty minutes later, Dilger was in a very agitated state and declared that he had killed Hall. When he started to leave and said he was going to kill himself, several persons restrained him until the police arrived shortly after 9:30 p.m. and took Dilger into custody.

At approximately 9:22 p.m., the Cass County sheriff's office received a telephone call in which Katherine Hall said Dilger was going to shoot her, followed by a gunshot and a scream. Fargo police officers, dispatched to the scene, found the body of Katherine Hall with the telephone receiver lying near the body.

In this appeal, Dilger has raised the following issues:

I. Did the court err in not suppressing statements made by Defendant?

II. Was the Defendant denied his right to a speedy trial as guaranteed by the United States Constitution and the laws and Constitution of the State of North Dakota?

III. Did the court err in refusing to instruct as to reasonable doubt as to murder or manslaughter?

IV. Was it error to refuse to give Defendant's requested instruction number 6?

V. Did the court err in refusing to grant Defendant's motion for new trial?

We will discuss the issues in the order presented.

## I.

### Suppression of Statements

On February 16, 1982, Dilger moved to suppress all statements made by him "to law enforcement officers prior to, during, and following his arrest," on the grounds that Dilger "was not adequately informed of his Miranda[1] rights and furthermore, even if informed of his Miranda rights, the statements taken were not voluntary." The trial court, finding that Dilger's statements were adequately protected by the officers' conduct via the Miranda warnings, that the statements were voluntary, and that Dilger waived his Miranda rights, denied the motion.

In reviewing an order denying a motion to suppress a defendant's statements, we said, in State v. Thompson, 256 N.W.2d 706, 710 (N.D.1977), quoting State v. Nagel, 75 N.D. 495, 28 N.W.2d 665, 677 (1947):

"'As to whether a confession is voluntarily or involuntarily made is a matter to be determined in the first instance by the court. And where the evidence is conflicting, such determination by the court will not be disturbed on appeal unless manifestly against the weight of the evidence.'"

We have also said:

"This court has previously considered whether or not a defendant's statements or confessions were made in violation of the Fifth Amendment to the United States Constitution. In State v. Klevgaard, 306 N.W.2d 185, 195 (N.D. 1981), we paraphrased the United States Supreme Court's decision in Miranda v. Arizona as saying that 'a defendant could waive these rights [the Miranda warnings], but that any waiver must be made "voluntarily, knowingly and intelligently."' We consider the totality of the circumstances to determine whether or not a waiver is made voluntarily, knowingly, and intelligently. Klevgaard, 306 N.W.2d

at 195. The standard of review which we employ when considering the totality of the circumstances is 'whether or not a determination of voluntariness is manifestly against the weight of the evidence ...' State v. Roquette, 290 N.W.2d 260, 264 (N.D.1980)." State v. Carlson, 318 N.W.2d 308, 311 (N.D.1982).

The evidence presented to the trial court on the motion was in the form of 31 depositions and six exhibits entered through stipulation.

From parts of those depositions one could conclude that when Dilger returned to the Catholic War Veterans Club he was in a very agitated state. Those parts include the statements: "I shot Kay! I think I killed her!", "I shot Kay! I shot Kay! I shot Kay!", "I killed her. She is dead.", "I want to kill myself.", and, "I killed Kay. I killed Kay. I should have killed myself. I'm going to kill myself.", before he was taken into custody. Those parts also indicate he had to be restrained until the police arrived, and may not have understood the Miranda warning when it was first administered to him at the time of his arrest.

There is also testimony from which one could conclude that Dilger's condition improved as the evening wore on; that when Detective Lindblad arrived at the Club, Dilger knew who Lindblad (whom Dilger had known for 15 years) was and why he was there; that at the police station Dilger knew where he was, that he was under arrest, who Lindblad was, requested to telephone his brother and, when he was unavailable, talked to his brother's wife by telephone for about ten minutes, and asked that his dog be taken care of; that Dilger was advised of his Miranda rights several times at the police station; that Detective Lindblad, who had been employed by the Fargo Police Department for 17 years and had been a detective for nine years and who had known Dilger for 15 years, and other officers at the station believed that Dilger understood his Miranda rights; and that

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, reh'g denied sub nom. California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

Dilger made statements in addition to those he had previously made at the Club.

Considering the totality of the circumstances surrounding Dilger's statements, we conclude that the trial court's determination of voluntariness and its order denying the motion to suppress Dilger's statements were not manifestly against the weight of the evidence.

Some of the statements sought to be suppressed were made before or during the process in which Dilger was arrested. *Miranda* proscribed the use of statements made in custodial interrogation without the use of adequate procedural safeguards to secure the privilege against self-incrimination. The court specifically stated that, "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

As to the statements made by Dilger after he was arrested, it is important to note that he was read his *Miranda* warnings at the time of his arrest and several times thereafter; when asked if he understood his rights, Dilger nodded his head in the affirmative; he never indicated that he did not wish to be interrogated; he never indicated that he wished to consult an attorney; there was no lengthy interrogation or incommunicado incarceration; and there was no evidence that Dilger was threatened, tricked, or cajoled into a waiver. Further, the statements made by Dilger after he was arrested and read his *Miranda* warnings were merely cumulative of those made prior to and during his arrest.

## II.

### Speedy Trial

Dilger contends that a 10-month delay between arraignment and trial deprived him of the speedy trial guaranteed by the United States and North Dakota Constitutions.

A look at the chronology of events will be helpful in determining this issue. Katherine Hall was killed and Dilger arrested on November 18, 1981. On November 19, a complaint charging Dilger with murder was issued. On November 20, the county court granted Dilger's motion for a psychiatric evaluation at the State Hospital. On January 18, 1982, Dilger was bound over to district court, he filed a demand for speedy trial, and trial was set for March 1. On February 16, Dilger filed six suppression motions and a motion for a 30-day continuance. On February 17, the trial was rescheduled to commence April 5. On March 30, Dilger filed a motion for a continuance "for a period of time in order to enable the defendant to receive a written report of Dr. Sharbo and to prepare for the cross examination of Dr. Sharbo." On April 2, an order suppressing photographs was entered, the State filed a notice of appeal of the suppression order, and Dilger withdrew his pending motion for continuance. This Court, in *State v. Dilger,* 322 N.W.2d 461 (N.D.1982), dismissed the State's appeal on July 30, 1982. Jury selection began on September 13. Testimony was first offered on September 22. The jury returned a verdict of guilty on October 8, 1982.

Relying on *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we said in syllabus paragraph 1, *State v. Erickson,* 241 N.W.2d 854 (N.D.1976):

"There are four factors to be assessed in determining whether a defendant has been deprived of his right to a speedy trial. These are: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

■ We do not deem the period between November 19, 1981, and the beginning of the trial to be presumptively prejudicial in view of the nature of the case, the types of evidence necessary, and the amount and types of discovery and preparation necessary for trial. Nevertheless, we will assess the four factors outlined in *State v. Erickson, supra,* and *Barker v. Wingo, supra.*

■ The period between November 19, 1981, and April 2, 1982, when the State filed its notice of appeal from the suppression order, clearly cannot be considered as delay

depriving Dilger of his right to a speedy trial. Much of the delay during that period was in response to motions made by Dilger. There were extensive pretrial motions, discovery, psychiatric evaluations, and reports. Delays for those pretrial preparations were appropriate and necessary.

Dilger's main contention on this issue centers on the delay caused by the State's appeal from the trial court's order suppressing photographs. Thus, we must next assess the reason for that delay.

The State appealed the suppression order pursuant to Section 29–28–07, N.D.C.C., which provides:

> "*29–28–07. From what the state may appeal.* An appeal may be taken by the state from:
>
> \* \* \* \* \* \*
>
> "5. An order ... suppressing evidence ... when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ... suppressed ... has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed...."

The crux of Dilger's argument on this matter seems to be that the State did not need the suppressed photographs; therefore, the delay caused by the State's appeal was unnecessary delay depriving him of a speedy trial. Dilger's argument would be stronger had we found the appeal frivolous. We did not so determine. We merely dismissed the appeal because the State "failed to discharge its burden of establishing that the order suppressing evidence has rendered the proof available to the State with respect to the criminal charge so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed." *State v. Dilger, supra,* 322 N.W.2d at 465. We noted earlier in that opinion that "our review of the prosecutor's statement and explanation must be guided by the utmost deference for the prosecutor's judgment in evaluating the remaining proof." *Id.* at 463. Dilger has not asserted that the State lodged its appeal for the purpose of hampering Dilger in his defense or for the purpose of delay.

Section 3731 of 18 U.S.C. provides for the United States a right of appeal from orders of federal trial courts analogous to that provided the State in Section 29–28–07, N.D.C.C. In *United States v. Jackson,* 508 F.2d 1001, 1004–1005 (7th Cir.1975), the court stated:

> "In calculating the length of delay, however, the period of delay attributable to review of an order appealable under 18 U.S.C. § 3731 should not be considered. The Supreme Court in *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966) reiterated that the speedy trial right is consistent with delays, and that while it secures rights to the defendants, '[i]t does not preclude the rights of public justice.' Section 3731, as amended, was designed to permit the Government to appeal from adverse dismissals, *see United States v. Clay,* 481 F.2d 133 (7th Cir.1973), cert. denied 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973), and insofar as appellate review is necessary for the fair administration of 'public justice,' the resulting delay is both unavoidable and justifiable. Thus, in a similar context, the court in *United States v. Bishton,* 150 U.S.App.D.C. 51, 463 F.2d 887, 890 (1972) excluded for speedy trial purposes the delay resulting from appellate review of an interlocutory trial order on the ground that '[t]he right of the Government to appeal decisions in the defendant's favor before jeopardy attaches is designed to protect the interest of society in lawfully prosecuting criminal offenders....' "

*See also, United States v. Herman,* 576 F.2d 1139, 1146 (5th Cir.1978), where the court stated:

> "An interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay. Of course, when the government acts arbitrarily,

negligently, or in bad faith, the delay may not be justifiable."

We agree with the foregoing statements and are persuaded that the delay attributable to the appeal by the State pursuant to Section 29–28–07, N.D.C.C., should not in this case be considered in determining whether or not Dilger was denied a speedy trial. We note that Standard 12–2.3, American Bar Association Standards for Criminal Justice (2nd Ed., 1980), also excludes "the period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . interlocutory appeals, . . ."

Further, when Dilger moved to suppress the photographs as evidence, he did so with full knowledge that the State had a right to appeal any suppression order entered on the motion. While Dilger's motion to suppress involved choosing between filing a motion to suppress, entailing a risk that the State might appeal any resulting suppression order, thereby delaying the trial, or not filing such a motion, thereby posing no risk of delay, the choice was his. " 'The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow.' " *State v. Hass,* 264 N.W.2d 464, 471 (N.D.1978), quoting *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *reh'g denied,* 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (1972).

The next factor to consider is Dilger's early assertion of his right to a speedy trial, which right he asserts was taken from him when the State appealed from the trial court's suppression order.

On January 18, 1982, Dilger filed a demand for a speedy trial without specifying any reasons therefor. On February 16, Dilger filed a motion for a 30-day continuance of the trial set for March 1. On February 17, the trial was rescheduled to commence April 5. On March 30, Dilger filed a motion for a continuance of the trial set for April 5, 1982. This motion was pending at the time the State appealed the suppression order and was only withdrawn after the State filed its notice of appeal. Dilger's contention that he continuously asserted his right to a speedy trial is undercut by his motions for continuances, especially in view of the fact that such a motion was pending at the time the State filed the complained-of notice of appeal. Also, as we have previously noted, the filing of a suppression motion in itself involves some risk of delay.

The final factor to consider is prejudice to the defendant. *Barker v. Wingo, supra,* noted three interests sought to be protected by the right to speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Dilger was incarcerated throughout the pretrial period, except for a period of four days. The trial court had established bail conditions, pursuant to Rule 46, N.D.R. Crim.P., which Dilger did not meet. We do not agree with Dilger's contention that the "interest of preventing oppressive pretrial incarceration has seriously been impaired." The length of time involved was not oppressive.

Dilger's conclusory allegations that he "has been anxious to take care of this matter and to get out of the cloud of suspicion" and that the "anxiety and stigma inevitably attaching to the charge of murder are particularly heavy," constitute a showing of only minimal prejudice, if any, accompanying the criminal process and, without more, are insufficient to make the delay here involved an unreasonable deprivation of his right to a speedy trial.

Dilger has not pointed out any way in which the delay hampered his defense, other than to assert:

"Because of the nature of this case the delay caused by the appeal was particularly devastating to the defense. While the State presented simple cold facts, the defense dealt with the emotional and mental circumstances of the act. Much of the testimony presented for the Defendant would be subjective ideas as to how he acted or how the Defendant and

the victim got along. These are the type of facts that are easily forgotten or altered with time. The highlights are embellished and the details are lost. . . ."

Dilger has not pointed to any testimony lost to him due to loss of memory or any other reason due to delay. The recollections of witnesses were memoralized in 31 depositions presented to the trial court for determination of Dilger's motions to suppress. Those depositions were available for the use of witnesses to refresh their memories. If there were other persons, whose recollections of facts and events Dilger wanted to have committed to writing, or if there were matters, other than those testified to in the 31 depositions, that Dilger wanted to have committed to writing, Rule 15, N.D.R. Crim.P., provided one avenue to do so and was employed in the pretrial phase of this case.

Absent any showing of how Dilger was impaired in his defense, we are unable to conclude that he was so impaired.

We have considered and balanced all of the relevant factors to be assessed in determining whether or not Dilger has been deprived of his right to a speedy trial. We conclude that Dilger has not been deprived of his right to a speedy trial and that the trial court did not err in denying Dilger's motions to dismiss on that ground.

## III.

### Murder and Manslaughter Instructions

In his requested jury instructions 10 and 13, Dilger requested that the jury be instructed that, before it could find Dilger guilty of murder, the State must prove beyond a reasonable doubt that he was not acting under extreme emotional disturbance for which there was reasonable excuse, and that, if the jury had a reasonable doubt as to whether the crime was murder or manslaughter, it had to find manslaughter rather than murder. The trial court refused to give either requested instruction and gave its own, which defined the crimes, stated the elements that must be found, and stated that each element must exist beyond a reasonable doubt.[2]

Dilger contends that once he raised evidence of extreme emotional disturbance for

---

**2.** In its murder instruction, the trial court gave the statutory definition of murder under Section 12.1–16–01(1) and (2), N.D.C.C., previously quoted, stated that each element of the offense must be proved beyond a reasonable doubt, stated the essential elements of the offense of murder charged in this case, and then said:

"If the State has proven to your satisfaction beyond a reasonable doubt all of the material allegations of the Information charging the Defendant with the offense of murder, it will be your duty to find the Defendant guilty of that offense. Before you can find that the Defendant committed the offense of murder, you must unanimously find beyond a reasonable doubt that elements 1 and 2 of this murder instruction have been proven and that either element 3(a) or 3(b) of this murder instruction has also been so proven. Additionally and before you can find the Defendant guilty of the offense of murder, you must consider whether or not the Defendant acted under the influence of extreme emotional disturbance for which there was a reasonable excuse, as is defined later in these instructions. If you find that the Defendant acted under such extreme emotional disturbance, then you cannot find him guilty of the offense of murder.

"If you find that the State has failed to prove to your satisfaction beyond a reasona-

ble doubt all of the material allegations of the Information charging the Defendant with the offense of murder, it will be your duty to find the Defendant not guilty of that offense."

In its manslaughter instruction, the trial court gave the statutory definition of manslaughter under. Section 12.1–16–02, N.D.C.C., previously quoted, stated that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt," and stated the essential elements of the offense of manslaughter in this case, including the following as elements:

"3. (a) the Defendant, Adam John Dilger, recklessly caused the death of Katherine Hall;

*OR,*

(b) the Defendant, Adam John Dilger, caused the death of Katherine Hall under circumstances which would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there is a reasonable excuse."

The trial court went on to conclude the manslaughter instruction with the following:

"If the State has proven to your satisfaction beyond a reasonable doubt all of the material allegations of the offense of manslaughter, it will be your duty to find the Defendant guilty of that offense. Before you can find that the Defendant committed the

which there was reasonable excuse, lack of extreme emotional disturbance became an element of the crime of murder that the State had to prove beyond a reasonable doubt. In other words, once a defendant raises evidence of extreme emotional disturbance, the State must prove the non-existence of extreme emotional disturbance beyond a reasonable doubt before the jury can convict the defendant of murder.

The relevant portions of our murder statute, Section 12.1–16–01, N.D.C.C., provide:

"*12.1–16–01. Murder.* A person is guilty of murder, a class AA felony, if he:

1. Intentionally or knowingly causes the death of another human being;

2. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or

\* \* \* \* \* \*

"Subsections 1 and 2 shall be inapplicable in the circumstances covered by subsection 2 of section 12.1–16–02."

Our manslaughter statute, Section 12.1–16–02, N.D.C.C., provides:

"*12.1–16–02. Manslaughter.*—A person is guilty of manslaughter, a class B felony, if he:

1. Recklessly causes the death of another human being; or

2. Causes the death of another human being under circumstances which would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in his situation under the circumstances as he believes them to be. An emotional disturbance is excusable, within the mean-

ing of this subsection, if it is occasioned by any provocation, event, or situation for which the offender was not culpably responsible."

Dilger points to Section 12.1–01–03, N.D.C.C., which provides, in pertinent part, as follows:

"*12.1–01–03. Proof and presumptions.* —1. No person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. An accused is presumed innocent until proven guilty. The fact that he has been arrested, confined, or charged with the offense gives rise to no inference of guilt at his trial. 'Element of an offense' means: a. the forbidden conduct; b. the attendant circumstances specified in the definition and grading of the offense; c. the required culpability; d. any required result; and e. the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue.

\* \* \* \* \* \*

"3. Subsection 1 does not apply to any defense which is explicitly designated an 'affirmative defense'. An affirmative defense must be proved by the defendant by a preponderance of evidence."

He contends that extreme emotional disturbance is an element of the crime under either "b" or "e" of Section 12.1–01–03(1). We believe the grading spoken of in subdivision "b" refers to relative levels of the same offense. One example might be Section 12.1–18–01, in which it is provided that, "Kidnaping is a class A felony unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a class B felony." Another example is Section 12.1–23–05, N.D.C.C., which grades theft offenses according to the value or nature of the property stolen. Subdivi-

---

offense of manslaughter, you must unanimously find beyond a reasonable doubt that elements 1 and 2 of this manslaughter instruction have been proven and that either element 3(a) or 3(b) of this manslaughter instruction has also been so proven.

"If the State has failed to prove to your satisfaction beyond a reasonable doubt that the Defendant is guilty of the offense of murder, you must then consider whether the De-

fendant is guilty of the offense of manslaughter. In order to find the Defendant guilty of that offense, the State must have proven to your satisfaction the elements of the offense as explained in this instruction. If the State has failed to prove to your satisfaction, beyond a reasonable doubt, that the Defendant is guilty of the offense of manslaughter, it will be your duty to find the Defendant not guilty of that offense."

sion "b" does not make the attendant circumstances specified in the definition and grading of one offense an element of another offense.

Whether or not extreme emotional disturbance falls within Section 12.1–01–03(1)(e) requires a determination of whether or not extreme emotional disturbance constitutes a "defense" to a charge of murder, thus requiring the State to prove the nonexistence of extreme emotional disturbance beyond a reasonable doubt before the jury could convict Dilger of the offense of murder.

Extreme emotional disturbance for which there is reasonable excuse has not been explicitly designated as a "defense," as, for example, lack of criminal responsibility is under Section 12.1–04–03, N.D.C.C., or justification is under Section 12.1–05–01, N.D.C.C., the nonexistence of which must be proved by the State as an element of the crime beyond a reasonable doubt. Section 12.1–01–03(1), N.D.C.C.

■ Clearly, the Legislature could have drafted our murder statute to require the State to prove beyond a reasonable doubt the nonexistence of an extreme emotional disturbance for which there is reasonable excuse had the Legislature chosen to do so. Recognition of extreme emotional disturbance as a mitigating circumstance does not require the State to prove its nonexistence in order to obtain a conviction. As the United States Supreme Court said in *Patterson v. New York,* 432 U.S. 197, 209, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281, 291 (1977):

> "To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate."

■ We conclude that, as extreme emotional disturbance has not been designated as a defense to a charge of murder, the State was not required to prove the nonexistence of extreme emotional disturbance for which there was reasonable excuse beyond a reasonable doubt in order for the jury to convict Dilger of murder. The same is true with regard to a charge of manslaughter. An extreme emotional disturbance for which there is reasonable excuse is a mitigating circumstance for the establishment of which the Legislature has prescribed no burden of proof. It is a mitigating circumstance that the jury may consider if evidence of such a condition is raised.

While the Legislature has provided no specific burden of proof on the matter, it is certainly true that "the prosecution can be expected to endeavor to prove the elements of the highest offense; it will attempt to disprove the mitigating circumstance. Because only the defendant will gain by establishing the mitigating circumstance, he alone will be concerned with showing its existence." *State v. Muscatello,* 55 Ohio St.2d 201, 378 N.E.2d 738, 740 (1978).

Dilger's reference to *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), is inappropriate. There, malice aforethought was presumed and the defendant could overcome the presumption only by showing by a preponderance of the evidence that the act was committed in the heat of passion upon sudden provocation. The instant case involves no presumption against Dilger that he must overcome by a preponderance of the evidence.

■ In light of the foregoing, we next proceed to examine the instructions given the jury on the murder and manslaughter charges. As we stated in *State v. Tipler,* 316 N.W.2d 97, 100 (N.D.1982):

> "The law governing our review of jury instructions is well established. The instructions must fairly inform the jury of the law that must be applied. A court need not give instructions in the specific language requested by the defendant. *State v. Folk,* 278 N.W.2d 410, 414 (N.D. 1979). Jury instructions should not mislead or confuse the jury. *State v. Jensen* [251 N.W.2d 182 (N.D.1977) ], *supra.* 'In determining whether a jury instruction is misleading, the instruction as a whole must be considered.' *State v. Roquette,* 290 N.W.2d 260, 265 (N.D.1980), quoting *State v. Erickson,* 241 N.W.2d 854, 861 (N.D.1976)."

The trial court's instruction on murder, noted in footnote 2, *supra,* correctly instructed the jury. The instruction in-

formed the jury of the elements of the offense charged and informed them that each element must be proved beyond a reasonable doubt. It also correctly informed the jury that before it could convict Dilger of murder it must consider whether or not he acted under the influence of extreme emotional disturbance for which there was a reasonable excuse.

██ The trial court's instruction on the offense of manslaughter, noted in footnote 2, *supra,* incorrectly stated that extreme emotional disturbance for which there is reasonable excuse is an element of the offense of manslaughter that the State had to prove beyond a reasonable doubt. This placed a higher burden upon the State than the statute requires.

We recognize, as Dilger has pointed out, that a similar instruction was discussed in *State v. Muscatello, supra.* The Ohio Supreme Court held the instruction to be impermissible, stating at 378 N.E.2d 738, 740:

"Because only the defendant will gain by establishing the mitigating circumstance, he alone will be concerned with showing its existence. Therefore, the import of the instant instruction is as if the trial court had instructed the jurors that appellee bore the burden of establishing the presence of the described emotional stress by proof beyond a reasonable doubt."

We decline to adopt that reasoning. The instruction given by the trial court in the instant case very clearly, although incorrectly, placed the burden of proving the existence of extreme emotional disturbance beyond a reasonable doubt upon the State.

As the trial court's instruction on murder was correct and the error in the manslaughter instruction placed a greater burden upon the State than the statute requires, which redounded to Dilger's benefit, rather than to his prejudice, and of which he therefore cannot complain, we find no error requiring reversal of the judgment. *See, State v. Morris,* 331 N.W.2d 48, 57 (N.D. 1983), and *State v. Lind,* 322 N.W.2d 826, 847 (N.D.1982).

Our view of the murder and manslaughter instructions given renders unnecessary a determination of whether or not the trial court should have instructed the jury that if they had a reasonable doubt as to which crime, murder or manslaughter, was committed, they should convict only of manslaughter.

IV.

*Dilger's Requested Instruction Number 6*

Dilger asserts that it was error for the trial court not to give his requested instruction number 6 on the presumption of innocence.

 The instruction given by the trial court is one that was upheld in *State v. Skjonsby,* 319 N.W.2d 764, 779 (N.D.1982), and Dilger concedes that "the instruction is not erroneous." Dilger contends, however, "that when an instruction is offered, which is also correct but more adequately and more fully informs the jury of the presumption, it should be given." While this assertion may be true as an abstract proposition, the trial court's failure to give the requested instruction was not error. The trial court is not required to give instructions in the specific language requested by the defendant. *State v. Skjonsby, supra.* If the instructions given correctly advise the jury, there is no error, even though the requested instruction which was refused was a correct statement of the law. *Armstrong v. Miller,* 189 N.W.2d 688 (N.D.1971).

V.

*Refusal of New Trial*

██ Dilger made a motion for a new trial pursuant to Rule 33, N.D.R.Crim.P., which allows the court to grant a new trial "if required in the interests of justice." This language is sufficiently broad to encompass a verdict against the weight of the evidence. *See, Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *United States, v. Lincoln,* 630 F.2d 1313 (8th Cir.1980); *State v. Olmstead,* 261 N.W.2d 880 (N.D.1978), *cert. denied,* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978); *State v. Holy Bull,* 238 N.W.2d 52 (N.D.1975). The trial court denied the motion.

Without claiming that the evidence was insufficient to sustain the conviction, Dilger contends that the verdict is contrary to the

weight of the evidence, requiring a new trial in the interests of justice.

A motion for a new trial is committed to the sound discretion of the trial court and its judgment is conclusive unless we can say that in denying the motion such discretion was abused. *State v. McLain*, 312 N.W.2d 343 (N.D.1981).

We have reviewed the evidence pointed to and are unable to say that the trial court abused its discretion in denying the motion for a new trial. The verdict is not contrary to the weight of the evidence and the evidence, viewed in the light most favorable to the verdict, is sufficient to sustain the conviction.

For the reasons stated, the judgment and the order denying the motion for a new trial are affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.