**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Scott Edward HOFFMAN, Defendant and Appellant.**

**Cr. Nos. 697 to 699.**

Supreme Court of North Dakota.

April 21, 1980.

Ella Van Berkom, Minot, for defendant and appellant.

Gerald Rustad, State's Atty., Williston, for plaintiff and appellee.

PAULSON, Justice.

Scott Edward Hoffman appeals from a judgment of conviction entered against him by the Williams County District Court. A jury convicted Hoffman on three separate counts of the crime of delivery of a controlled substance, in violation of § 19–03.1–05 of the North Dakota Century Code. The jury determined that on three separate occasions Hoffman delivered controlled substances to a government agent. We affirm.

Hoffman raises two issues on appeal:

(1) That the jury arbitrarily disregarded evidence of entrapment in reaching its verdict; and

(2) That the absence of certain witnesses resulted in a denial of his right to cross-examine and confront those witnesses.

In the fall of 1978, the Williams County sheriff's office contacted the Drug Enforcement Unit of the North Dakota Attorney General's office for assistance in policing increased drug traffic in the Williston area. In response to that request, the Drug Enforcement Unit sent informants to the Williston area to gather intelligence and seek information about drug dealers and to relay that information to local authorities.

The first informant sent into the area was James Bigalke. Bigalke would frequent the places which were common gathering spots for young people and become friendly with the people there. Four months after the arrival of Bigalke, another informant named Schemp began to operate in Williston. Schemp used the same technique of becoming friendly with the people at local gathering spots. Invariably, Schemp and Bigalke would inquire about the availability of drugs from the people they befriended. The informants used drugs in the presence of various people and were soon accepted into the drug subculture in Williston.

On February 28, 1979, Bigalke arranged a meeting between Agent Gerald Kemmet of the Drug Enforcement Unit and the defendant, Hoffman. On that evening, Hoffman sold Kemmet 20 Thai Sticks at a price

of $100. Subsequent testing at the State Laboratories showed the Thai Sticks to contain marijuana.

A second meeting was arranged between Kemmet and Hoffman on March 15, 1979. At about 10:15 that evening, at the Miller Body Shop where Hoffman was employed, Hoffman sold Kemmet 25 tablets of LSD at a price of $75.

The third delivery of controlled substances occurred on March 29, 1979. On that day, Kemmet met Hoffman at the Skelly Truck Stop which is located four miles west of Williston. On that occasion, Hoffman sold Kemmet three pounds of marijuana and twelve ounces of hashish. At that time, Hoffman was arrested and charged in three Informations for the crime of delivery of controlled substances on three separate occasions, namely, on February 28, March 15, and March 29, 1979.

## I.

Hoffman contends that the jury arbitrarily disregarded the evidence of entrapment in reaching its verdict. Counsel for Hoffman presented evidence which showed that Kemmet put a great deal of pressure on Hoffman to make the March 29 sale. This evidence consisted primarily of testimony elicited from Kemmet and from Hoffman's employer that Kemmet was calling Hoffman at work several times daily. Evidence was also presented to show that Bigalke had managed to become a trusted friend of Hoffman. The essence of Hoffman's argument appears to be that evidence of entrapment was so overwhelming that the jury could not possibly convict without having disregarded the evidence of entrapment. We disagree.

The law of entrapment in North Dakota is set out in § 12.1–05–11, N.D.C.C., which provides as follows:

"*12.1–05–11. Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the offense.

2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other

means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

As this court has said on several occasions, § 12.1–05–11, N.D.C.C., provides the "normally law-abiding person" test or "objective" test of entrapment. *State v. Unterseher*, 289 N.W.2d 201 (N.D.1980); *State v. Bartkowski*, 290 N.W.2d 218 (N.D. 1980); *State v. Berger*, 285 N.W.2d 533, 539 (N.D.1979); *State v. Boushee*, 284 N.W.2d 423, 433 (N.D.1979); *State v. Folk*, 278 N.W.2d 410, 414 (N.D.1979); *State v. Mees*, 272 N.W.2d 284, 288 (N.D.1978); *State v. Pfister*, 264 N.W.2d 694, 697 (N.D.1978). Under the "normally law-abiding person" test, the focus is on the conduct of the law enforcement officials and the effect that that conduct would have on a normal law-abiding citizen. *Mees, supra* 272 N.W.2d at 289. Predisposition of the defendant to commit the crime is irrelevant in utilizing this test. The burden of proving entrapment is on the defense, and entrapment is a question for the jury to decide unless there is no dispute as to the facts or inferences to be drawn therefrom. *Berger, supra* 285 N.W.2d at 539.

The record supports the jury's finding that entrapment did not occur in the instant case. The actions of Kemmet and his informants constituted trickery and deception, but were not of the outrageous and unacceptable nature that § 12.1–05–11, N.D.C.C., is designed to prevent. We have indicated in the past that undercover police work is "dirty business" (*Folk, supra* 278 N.W.2d at 416), but we believe that it is a necessary tool in the battle against crime. The Legislature indicated its approval of undercover narcotics operations by appropriating funds at the 1979 Legislative Session for use by the Drug Enforcement Unit.

*See* § 54–12–14, N.D.C.C.; and *Folk, supra* 278 N.W.2d at 417.

The record reveals that Bigalke befriended Hoffman and others and consistently questioned them about the availability of drugs. The actual purchases of the drugs were made by Kemmet, who testified regarding those purchases and was cross-examined regarding them. Evidence regarding entrapment, and especially the police conduct as it related to entrapment, was presented to the jury. The jury was not persuaded by the entrapment argument made by Hoffman. Therefore, Hoffman failed to meet his burden of proving entrapment.

Counsel's argument that the jury disregarded the evidence of entrapment is unpersuasive. It is interesting to note that the jury requested certain portions of the transcript to be read to them after they had been in deliberations for about three and one-half hours. Those portions of the transcript related specifically to evidence about informants, instructions to informants, and phone calls to Hoffman's place of employment in the days immediately preceding his arrest. This provides an unusual insight into the fact that the jury did indeed consider evidence relating to entrapment.

We conclude that Hoffman failed to meet his burden of proving that a normally law-abiding person would have been induced or persuaded by the police conduct involved into committing any of the offenses for which he has been convicted.

## II.

■ Hoffman contends that he was deprived of his right to cross-examine and confront the witnesses against him. He specifically argues that the absence of Bigalke and Schemp from the trial made it impossible for him to prove his defense of entrapment. This argument is not persuasive.

The state's attorney listed all of the witnesses the state intended to call on the Informations, as required by law. The lists of witnesses did not include the names of the informants Bigalke and Schemp. Counsel for Hoffman made no pre-trial motions or requests for information regarding the informants and she did not attempt to subpoena the informants to appear in court. Nevertheless, counsel now contends that these witnesses "appeared" against Hoffman although they were not actually present in the courtroom.

Counsel argues that the informants, Bigalke and Schemp, "appeared" in the person of Gerald Kemmet. This is an interesting argument because Kemmet did testify and was subjected to cross-examination. Also, Kemmet was the individual who actually made all of the purchases. The function performed by the informants was to set up the sales to Kemmet. The sales were made to Kemmet even though he was a complete stranger to Hoffman at the time of the first sale and his only subsequent contacts with Hoffman involved arranging purchases of more drugs.

If Hoffman believed that Bigalke and Schemp were necessary to proving his affirmative defense of entrapment, he should have made more of an effort to produce them himself. Our recent decision in *State v. Boushee*, 284 N.W.2d 423, 431 (N.D.1979), is analogous. In *Boushee*, we held that the prosecution was not required to call a witness whose name was endorsed on the information, but who did not testify at the preliminary hearing and was not present within the borders of the State. In *Boushee*, we said that if the witness was necessary to the defense, the defense should have made a greater effort to produce that witness. In the instant case, Hoffman's interest in producing the witnesses was even greater than in the circumstances which were involved in *Boushee*. Hoffman, through reasonable efforts, could have discovered the whereabouts of Bigalke and Schemp and subpoenaed them to appear in court. Hoffman, unlike Boushee, wanted to use the witnesses to prove his affirmative defense of entrapment. His argument that the witnesses "appeared" against him through the person of Gerald Kemmet is unpersuasive because he could have invoked the protections of the hearsay rule to prevent Kemmet from introducing inculpatory evidence.

We conclude that the prosecution was not required to produce the informants Bigalke and Schemp under the circumstances of this case, and that Hoffman should have made an effort to produce them himself if he believed that they were necessary to his defense.

Affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.