STATE of North Dakota, Plaintiff
and Appellee,

v.

Donald J. FLAMM, Jr., Defendant
and Appellant.

Cr. Nos. 917, 918.

Supreme Court of North Dakota.

Oct. 3, 1983.

Kent Reierson, State's Atty., Williston, for plaintiff and appellee State of N.D.

Patrick F. Leier, of Harms, Leier & Evenson, Williston, for defendant and appellant.

VANDE WALLE, Justice.

Donald Flamm appealed from judgments of the district court of Williams County finding him guilty of delivering a controlled substance on June 16, 1982, and as an accomplice to delivery of a controlled substance on October 11, 1982. We affirm.

In March 1982 an individual volunteered to assist the North Dakota Drug Enforcement Unit in apprehending drug sellers in the Williston area. The Drug Enforcement Unit, not knowing this walk-in volunteer, interviewed him and investigated his background. Finding that he had no history of drug problems, no criminal convictions, and no improper motives to entrap any particular individual, the Drug Enforcement Unit accepted him as an informant. The Unit explained the law of entrapment and clearly stated that he could not carry a gun in performing his undercover work.

The informant met defendant Flamm in February 1982, one month before he volunteered his services. Both worked for the same company.

During June the informant asked Flamm on various occasions to sell drugs to a friend of his. At first Flamm refused, but then he agreed to arrange the sale of a half-ounce of cocaine to the informant's friend on June 16, 1982.

To complete the sale of cocaine, Flamm and the informant traveled to Montana to meet Flamm's drug contact, Cornelius Riedl. While traveling Flamm learned that the informant did not have the money to purchase the cocaine. Flamm offered to pay $400 of his own money to Riedl and promised to wire the rest of the money to Riedl when the informant's friend paid him in full. When Flamm picked up the cocaine, a friend of Riedl's gave Flamm about five grams of hashish as a bonus for the deal. Flamm asked the informant to smoke some hashish with him and the informant consented. Flamm and the informant then returned to Williston the same evening. The informant called special agent Gary Wiley, who was to be the "friend" and purchaser of the cocaine. Agent Wiley purchased the half-ounce of cocaine from Flamm as the three of them, Wiley, Flamm, and the informant, were monitored by other agents who saw and heard the transaction. Before giving the cocaine to agent Wiley, Flamm tested the drug to determine its value. He assessed its worth at $1,300. Flamm offered to smoke some hashish with agent Wiley. When agent Wiley refused, Flamm gave him some hashish in a separate container.

After completing this transaction, agent Wiley asked Flamm to arrange another deal. According to Flamm, agent Wiley called him every day for the next two weeks; according to agent Wiley, many of those calls were in response to Flamm's calls to him.

Flamm attempted to arrange a sale of methamphetamines. Agent Wiley lent Flamm $200 to help Flamm with his travel expenses to Montana, but Flamm did not complete the sale. The informant, at agent Wiley's request, asked Flamm to return the $200. According to Flamm, when he refused to return the money, the informant pointed out to Flamm, who stood near the informant's car, that he had a handgun on the floor of his car. The informant told Flamm, "I mean business." Flamm responded by calling numerous drug connections throughout the United States.

On October 11, 1982, Flamm arranged a sale of nine ounces of cocaine and 3,000 quaalude tablets. He again used as his contact Riedl, who at that time was in Florida. Riedl brought the drugs with him to Williston. When Flamm realized that he was under surveillance, he attempted to draw the surveillance team away from Riedl, who had the drugs.

Flamm later introduced Riedl to agent Wiley at a motel. Agent Wiley and Riedl left to retrieve the hidden drugs, which were to be worth more than $25,000. After agent Wiley and Riedl returned to the motel with the drugs, both Riedl and Flamm were arrested.

Flamm was charged with delivery of a controlled substance for his sale of cocaine on June 11, 1982, and as an accomplice to delivery of a controlled substance for his assistance in the sale of cocaine and (fake)

quaalude tablets on October 11, 1982, in violation of Sections 19–03.1–23(1)(a) and 19–03.1–07(2)(d), N.D.C.C.

On appeal Flamm contends that the evidence is not sufficient to sustain the convictions in light of the evidence on the defense of entrapment. Flamm maintains that the jury arbitrarily disregarded the evidence of entrapment in finding him guilty. Even though Flamm admitted to delivering and arranging to deliver controlled substances, he argues that he naturally succumbed to psychological pressure created by telephone calls, numerous inquiries about sales, and the threat of a handgun. Flamm further maintains that the Drug Enforcement Division violated its own guidelines and that this allegedly improper conduct proves that he was entrapped. We disagree.

Section 12.1–05–11, N.D.C.C., describes the defense of entrapment:

"12.1–05–11. *Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

■ The defendant must prove the defense of entrapment by a preponderance of the evidence. *State v. Pfister,* 264 N.W.2d 694 (N.D.1978). In reviewing the evidence presented in the defense of entrapment, we use the standard articulated in *State v. Manke,* 328 N.W.2d 799 (N.D.1982). In cases challenging the sufficiency of the evidence to sustain a conviction, "we do not weigh conflicting evidence, nor do we judge the credibility of the witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences

therefrom to see if there is substantial evidence to warrant a conviction." 328 N.W.2d at 805. See *State v. Hartsoch,* 329 N.W.2d 367 (N.D.1983); *State v. Christian,* 328 N.W.2d 815 (N.D.1982). This standard recognizes the jury's role in determining the facts: The jury alone weighs the evidence and judges the credibility of the witnesses; the jury may find a defendant guilty, even though it could have found him not guilty *if* it had believed other evidence; and this court must assume that the jury believed the evidence that supports the verdict and disbelieved any contrary or conflicting evidence. *Manke, supra.*

Flamm contends that the informant and agent Wiley used undue psychological pressure by frequently calling him and asking him questions about selling drugs. This allegation is similar to the allegation rejected in *State v. Hoffman,* 291 N.W.2d 430 (N.D.1982). In *Hoffman* the defendant claimed that a special agent "put a great deal of pressure" on him by calling him at work, several times each day. 291 N.W.2d at 432. Like defendant Hoffman, Flamm contends that such psychological tactics unequivocally indicate entrapment. This court need not attempt to define the degree of permitted contacts, but it instead may rely upon the definition of entrapment in the statute, Section 12.1–05–11, N.D.C.C.

■ Section 12.1–05–11 provides for an objective standard in defining the entrapment defense. *State v. Unterseher,* 289 N.W.2d 201 (N.D.1980); *State v. Pfister, supra.* "The focus of the statute is on the activities of the government and their relation to the reasonable man." *State v. Pfister,* 264 N.W.2d at 697 [quoting the *Working Papers* of the National Commission on Reform of Federal Criminal Laws 306 (1970)]. Therefore, when a jury considers the number of times an agent contacted a defendant, it relates the nature of the pressure to the response of a reasonable person. The issue of undue psychological pressure is thus logically a question for the jury.

This court in *Pfister* stated that the determination of entrapment is a question of

fact for the jury, but we articulated a narrow exception: When there is no dispute as to the facts or when there is no dispute as to the inferences to be drawn from the facts, the court will determine the question of entrapment as a matter of law. See also *State v. Hoffman, supra; State v. Berger,* 285 N.W.2d 533 (N.D.1979).

■ In the present case we will not determine the issue of entrapment as a matter of law because there is conflicting testimony about the frequency of and motive for the phone calls Flamm received. Agent Wiley testified that many of the allegedly numerous calls he made to Flamm were in response to Flamm's calls to him. Flamm stated that he was also intimidated by the informant's reference to the handgun on the floor of the car. Yet, he freely delivered a half-ounce of cocaine to agent Wiley on June 16, 1982, *prior* to the display of the gun. And, after seeing the gun and making numerous phone calls to drug dealers throughout the United States, Flamm telephoned agent Wiley, who recorded the conversation, and stated: "And I haven't gotta thing out of it but a big phone bill you know right now, but ... if we can get it going you know ... everybody will get something out of it you know." In addition to the prior delivery and his statement of expected personal benefit, Flamm had assisted the informant by lending him $400 for the first purchase, had on his own determined the value of the half-ounce of cocaine, and had attempted to distract surveillance members from monitoring Riedl's activities. Even though the informant's reference to a handgun was contrary to the Drug Enforcement Unit's commands, these other facts support the jury's rejection of Flamm's entrapment defense.

Flamm also argues that not only did he naturally respond to psychological pressure, but also that the North Dakota Drug Enforcement Unit violated its own objectives by employing improper investigative means. The Drug Enforcement Unit has two objectives: to lessen the flow of illegal drugs into North Dakota and to infiltrate existing networks of drug traffic. Flamm asserts that because the Drug Enforcement Unit urged him to obtain drugs, the Drug Enforcement Unit actually compelled him to bring drugs into North Dakota from Montana and Florida. This argument required the jury to consider the Drug Enforcement Unit's conduct; yet, the entrapment statute gave the jury the opportunity to examine this issue.

■ The statute relates a law-enforcement officer's conduct to the normally law-abiding person's response. In the present case when the jury considered the Unit's conduct, it evaluated this aspect of alleged impropriety. In *State v. Folk,* 278 N.W.2d 410 (N.D.1979), this court recognized that undercover work is inherently deceptive. See also *Hoffman, supra,* 291 N.W.2d at 432 [entrapment statute is designed to prevent outrageous and unacceptable conduct]. The United States Supreme Court similarly declared that "artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrell v. United States,* 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413, 416 (1932). Stratagem is needed particularly in detecting vice crimes such as illegal drug sales. See Y. Kamisar, W. LaFave, and J. Israel, *Modern Criminal Procedure,* § 7, "Police 'Encouragement' and the Defense of Entrapment" 518 (5th ed. 1980). To preclude further investigation once a potential defendant declares that he or she intends to obtain drugs out of State is to derogate police power. In the present case the jury's rejection of Flamm's entrapment defense indicates that the jury believed that the Drug Enforcement Unit's conduct did not improperly induce Flamm to commit the crimes.

■ This court rejects Flamm's argument that the jury arbitrarily disregarded the evidence for another reason. After the jury retired to determine the verdict, it returned to ask the trial judge for further clarification of the defense of entrapment. The judge advised that the law on entrapment is framed in "objective terms of whether persons at large who would not otherwise have done so would have been encouraged by the government's actions to

engage in the crime." *Pfister, supra,* 264 N.W.2d at 697 [quoting the *Working Papers* of the National Commission on Reform of Federal Criminal Laws (1970)]. The jury's decision to ask for further information indicates, as the jury did in *Hoffman,* that it carefully considered the entrapment defense.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., SAND and PEDERSON, JJ., and PAULSON,* Surrogate Justice, concur.