**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kelly D. OVERBY, Defendant and Appellant.**

**Cr. Nos. 920162, 920163 and 920164.**

Supreme Court of North Dakota.

March 11, 1993.

---

**410**

Robert A. Freed, Asst. State's Atty., Jamestown, for plaintiff and appellee.

Don R. Krassin, Wahpeton, for defendant and appellant.

VANDE WALLE, Chief Justice.

Kelly D. Overby appealed from three criminal judgments of conviction resulting from three jury verdicts, each finding him guilty of delivery of a controlled substance pursuant to section 19–03.1–23(1)(a), NDCC. He alleges as grounds for reversal the entrapment defense and the Fifth Amendment privilege. We affirm.

In 1990, felony theft charges were issued against Troy D. Nelson for writing nonsufficient fund (NSF) checks. To receive some leniency on these charges, he offered to cooperate with law enforcement officials and, in early November 1990, he was recruited by the Stutsman County Sheriff's Department to work for them as an undercover drug informant. Nelson was told to keep his "eyes and ears open for any drug activity," and if a situation presented itself, to give a target individual the opportunity to sell him illegal drugs. Nelson produced the names of a number of individuals whom he believed were dealing in illegal drugs in the Jamestown area. One of the names Nelson supplied was that of Kelly D. Overby.

Nelson was well-acquainted with the Overby family. He and Overby's brother were best of friends, and he had visited the Overby residence a number of times. Although not close friends, Nelson and Overby had first met approximately one year before Nelson began working with the Sheriff's Department.

After a number of telephone conversations between them, Nelson and Overby met at a party on December 10, 1990. This was apparently the first time that the two had formally socialized together. Nelson mentioned to Overby that a mutual friend was being released from the State Penitentiary in Bismarck the following day, and that the two of them should meet him upon his release. Nelson offered to drive, and Overby later agreed to go with him. During the trip to Bismarck on December 11, Nelson told Overby about his NSF felony theft charges and his difficulty paying off his fines. Overby realized that Nelson should have been attending high school that day. Nelson told Overby that he was

thinking of dropping out. At the end of the trip, Nelson asked Overby for some marijuana, but Overby declined.

On December 13, Nelson telephoned Overby and asked if he wanted to go to Fargo so he could retrieve some belongings out of his repossessed car. Overby agreed to go with him. During the trip, Nelson again recounted his money troubles from his NSF charges. Nelson asked Overby for marijuana so he could sell it and pay off his restitution obligations. Overby declined.

Later that evening, the two went out driving. The topic turned to cocaine, with Nelson asking Overby about its price, availability, and quality. At trial, Overby claimed he could answer Nelson's questions concerning cocaine because he had heard about it "on the street" and from his criminal justice classes he had attended at Bismarck State College.

On December 15, Nelson called Overby and asked to buy some cocaine. Overby agreed to obtain some as soon as possible. Three sales took place on December 15, 16, and 18, after which Overby was arrested.

At trial, Overby raised the defense of entrapment by claiming that he had never sold illegal drugs before, and that he was led into involvement with the cocaine deliveries by the manipulative tactics of Nelson which allegedly played on their friendship by arousing his sympathies and concern for Nelson's well-being. Overby contends that because of their friendship and because of Overby's impression that Nelson was having money troubles, that Nelson was considering dropping out of school because of those money troubles, that Nelson was going to sell the cocaine in order to pay off his restitution obligations, and that Nelson was not going to use the cocaine himself, Overby arranged to get cocaine and deliver it to Nelson. On March 25, 1992, Overby was convicted by a jury of three counts of delivery of a controlled substance pursuant to section 19–03.1–23(1)(a), NDCC.

Overby raises three issues: (1) whether the court erred by refusing to allow him to present to the jury the complete picture of how the police induced him to deliver the cocaine; (2) whether the court erred by ruling that entrapment had not occurred as a matter of law; and (3) whether the court erred by requiring him to answer self-incriminating questions about the names of those who supplied or used cocaine.

## I. Disallowance of Evidence

■ Overby contends that the court erred in prohibiting him from bringing to the jury's attention the fact that Nelson had a criminal record and charges pending against him, and the fact that Nelson had delivered marijuana to others in the presence of Overby to procure his confidence in Nelson.

In determining what evidence should be admitted or allowed to be expanded upon in an entrapment case, the judge must look to the criteria for entrapment as previously summarized by this Court:

"Entrapment occurs 'when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.' NDCC 12.1–05–11(2). Any person cooperating with a law enforcement agency is a 'law enforcement agent' for purposes of the entrapment defense. NDCC 12.1–05–11(3); *State v. Erban*, 429 N.W.2d 408, 413 (N.D.1988). Entrapment is an affirmative defense that the accused must prove by a preponderance of the evidence. *City of Bismarck v. Nassif*, 449 N.W.2d 789, 796 (N.D.1989). Ordinarily, whether entrapment exists is a question of fact for the jury. *State v. Rehling*, 426 N.W.2d 6, 7 (N.D.1988). But, if no dispute exists over the facts or the inferences to be drawn from the facts, the court may determine the existence of entrapment as a matter of law. *City of Mandan v. Willman*, 439 N.W.2d 92, 93 (N.D.1989). Police use of unlawful means is entrapment.

"Our entrapment statute employs the 'objective' test ' "to determine whether police conduct is sufficiently unsavory to justify an entrapment defense." ' *State*

*v. Pfister*, 264 N.W.2d 694, 697 (N.D. 1978).... Thus, in order to fashion an entrapment defense under NDCC 12.1–05–11, the accused must establish two elements: that law enforcement agents induced the commission of the crime and that the method of inducement was likely to cause normally law-abiding persons to commit the offense. *State v. Weisz*, 356 N.W.2d 462, 464 (N.D.1984)."

*State v. Kummer*, 481 N.W.2d 437, 441 (N.D.1992).

In an attempt to demonstrate to the jury that law enforcement agents induced the commission of the crime and that the method of inducement was likely to cause a normally law-abiding person to commit the offense, *Weisz, supra*, Overby's attorney made the following offer of proof in closed chambers:

"Your Honor, I want to make an offer of proof to the testimony that hopefully would have been elicited from the defendant while he was on the stand. I wanted testimony as to why he felt it necessary that he deliver these drugs to Troy Nelson because he felt sorry for him. And I believe his testimony would have been that he felt that he had taken advantage of Troy Nelson because.... [h]e had a felony at age 18, we did hear some discussion about that.... Troy Nelson had made it clear to the defendant that he had these NSF checks that he needed to make restitution on."

Within the framework of the above criteria regarding entrapment and recognizing the evidence that had already been presented to the jury, the judge refused Overby's request to admit additional evidence of Nelson's criminal record.

Although Nelson was not convicted of any crime, he had felony theft charges pending against him for writing NSF checks. Overby contends that, even though the jury was made aware of Nelson's pending felony theft charges by the testimony of Nelson, Overby, and a law enforcement officer, the trial judge erred in not allowing him to present further evidence on Nelson's criminal record and pending charges.

■ In the ordinary sense, two related premises of law coalesce when questioning an informant about his or her past criminal record. First, evidence that an informant-witness has received favorable treatment at the hands of law enforcement authorities, particularly where that witness is subject to prosecution, is probative of the witness's interest or bias and may be developed through cross-examination or otherwise presented to the jury. *Mevorah v. Goodman*, 79 N.D. 443, 57 N.W.2d 600, 49 A.L.R.2d 825 (1953); *Suan v. State*, 511 So.2d 144 (Miss.1987). Convictions and pending charges against an informant may be relevant when the informant's desire for leniency in a pending charge may cause him or her to more actively and unconscionably induce a defendant. *See e.g., People v. Duis*, 81 Mich.App. 698, 265 N.W.2d 794 (1978); *People v. Asher*, 67 Mich.App. 174, 240 N.W.2d 749 (1976). The implication of such a status does not indicate entrapment per se, but merely requires a closer scrutiny of the informant's actions in the alleged inducement to determine, among other things, if the law enforcement agent's actions were overreaching or contrary to public policy. *Kummer, supra* [VandeWalle, J., concurring].

■ Second, those accused of a crime have the right to broad and extensive cross-examination of the witnesses against them—especially so with respect to the principle prosecution witness. *State v. Haugen*, 458 N.W.2d 288 (N.D.1990); *State v. Bartkowski*, 290 N.W.2d 218 (N.D.1980); *Suan, supra*. This right is secured in the North Dakota Constitution, article I, section 12; the Sixth Amendment of the United States Constitution; and the North Dakota Rules of Evidence, Rule 611(b).

A number of cases require the admissibility of charges pending against an informant and an informant's past criminal record. *Commonwealth v. Signorine*, 404 Mass. 400, 535 N.E.2d 601 (1989); *Suan, supra; Speller v. Commonwealth*, 2 Va. App. 437, 345 S.E.2d 542 (1986). *See also* 5 Patrick L. McCloskey & Ronald L. Schoenberg, *Criminal Law Advocacy*, ¶ 13.04 (1993). However, these cases are dissimi-

lar to Overby's case in one important detail: the facts and circumstances of Nelson's felony theft charges were presented to the jury.

■ A trial judge need not admit relevant evidence or permit further questioning regarding that evidence if the evidence is cumulative or unduly repetitive. *Weisenberger v. Senger*, 381 N.W.2d 187 (N.D. 1986). The jury became well-aware that Nelson had felony theft charges against him for issuing checks with insufficient funds. This fact came out in the testimony of a number of witnesses, including Nelson and Overby.[1] Because Nelson's felony charges were presented to the jury on a number of occasions, the jury became aware of Nelson's interest and potential for bias, and Overby had the opportunity to cross-examine Nelson regarding the charge. The judge did not err in denying the admission of the additional evidence of Nelson's criminal record.

■ Overby's contention that the court erred in not allowing him to question Nelson on his alleged previous sale of marijuana to others in his presence is also without merit. In any proceeding before a trial court, the judge must be careful to not allow into evidence any prior bad acts of a witness when to do so would result in a "trial within a trial." *See State v. Kringstad*, 353 N.W.2d 302 (N.D.1984). Whether or not the allegation that Nelson sold drugs to others while in the presence of Overby would be relevant to show that Nelson was not a credible witness or that the actions of the law enforcement agent were overreaching, such unsubstantiated evidence to implicate Nelson in a crime with which he has not been charged is inadmissible because it would be prejudicial and irrelevant to the proceeding. *See* Rules 404, 608, & 609, NDREv. The court did not err in refusing to allow evidence of any alleged sale of illegal drugs to persons other than Overby.

The court did not err in disallowing this testimony.

## II. *Entrapment as a Matter of Law*

■ Overby also challenges the jury's factual conclusion that entrapment did not

---

1. Some instances in which Nelson's felony theft charges came to the attention of the jury were from the direct examination of Troy Nelson,

"Q. At that time was there something pending against you in court?
"A. Yes, there was.
"Q. What was that?
"A. Class C felony for NSF checks.
"Q. That's bad checks that you wrote that were in excess of like $500?
"A. Yes.
"Q. That hadn't gone to court though had it?
"A. No, it hadn't.",
from the cross-examination of Troy Nelson,
"Q. Now when you first went to the drug task force and talked to them about working for them were you looking for any kind of help with your felony charge?
"A. Yes, I would have been.
"Q. That was pending against you?
"A. Yeah.
"Q. You were looking for some help?
"A. Yes, I did, but I didn't go there and request that it be dropped or anything, no.
"Q. Was anything ever mentioned to you about—or was there any discussion that some help might be available if you would cooperate?
"A. You know, I don't believe that I actually at the time that I talked to Manley and Nel-

son, and when I went into talk to Cliff Caldwell that night, I don't believe that I did specify anything that I could get out of or get, that I never said anything that night.
"Q. Did you make it plain to them that you had a felony charge?
"A. Yeah, I'm sure I'd told them I had a felony charge against me, yes.
"Q. And that was pending at that time, correct?
"A. Yes, it was, and my exact words to Officer Manley would have been, you help me, I'll help you.",
from the cross-examination of Cliff Caldwell, an employee of the Jamestown Police Department,
"Q. And I believe you testified that Troy Nelson came or Deputy Manley said that he was bringing Troy Nelson in because he had some problems with some NSF checks; is that correct?
"A. That's correct.",
and from the direct examination of Kelly Overby,
"A. .... Our first discussion was we talked about his NSF checks and he said he had to make payment on his NSF checks. He'd had to make $50 every week he had to pay, no ifs, ands or buts about it or else he was going to jail. But I had the impression that he hadn't been to court on it, that he was still waiting to go to court on it."

occur. Our standard of review of this issue is as follows:

"... we do not weigh such evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction."

*State v. Rehling,* 426 N.W.2d 6, 7 (N.D. 1988); *Weisz, supra,* at 464; *State v. Kluck,* 340 N.W.2d 446, 447 (N.D.1983); *State v. Manke,* 328 N.W.2d 799, 805 (N.D. 1982).

Overby contends that the jury did not consider that Nelson had a criminal record. As we have stated above, the jury was aware of felony theft charges pending against Nelson. Other evidence relating to Nelson's past was properly withheld by the court.

Overby contends that the jury did not properly consider that Nelson placed undue pressure upon him to sell the cocaine by playing to his sympathies and exploiting his friendship. The mere fact that an acquaintance persuaded Overby to make the sale does not establish entrapment. *Weisz, supra; State v. Flamm,* 338 N.W.2d 826 (N.D.1983), [informant met defendant one month before volunteering his services as a drug informant, not per se entrapment]; *State v. Boushee,* 284 N.W.2d 423 (N.D.1979) [wife of defendant's friend, not per se entrapment]; *Commonwealth v. Lebo,* 405 Pa.Super. 316, 592 A.2d 353 (1991) [casual acquaintance, frequenting same establishments, never seeing each other socially, only seeing defendant three times a year, not entrapment].

Those cases which have held that exploiting a friendship was indicative of entrapment all involve more than just a mere friendship. *See e.g., People v. Crawford,* 121 Mich.App. 306, 328 N.W.2d 377 (1982) [defendant worked with informant, knew of informant's son's death, obtained valium for informant out of sympathy in informant's attempt to cope with son's death]; *People v. Ramon,* 86 Mich.App. 113, 272 N.W.2d 124 (1978) [informant was defendant's cousin]; *People v. Soper,* 57 Mich.

App. 677, 226 N.W.2d 691 (1975) [informant was a childhood friend and claimed addiction]; *People v. Turner,* 210 N.W.2d 336 (Mich.1973) [knew informant for three years, informant promised financial benefits to defendant in his business, story of informant's addicted girlfriend]. Similar circumstances are not present in this case.

In considering an entrapment defense, we have previously rejected claims of undue psychological pressure in inducing one to sell illegal drugs. *Kluck, supra* [fact that informant was a friend of defendant, that informant stressed that defendant owed him a favor, and that informant's friend desperately needed the drugs, was not per se entrapment]; *Flamm, supra* [psychological pressure by repeatedly calling and asking for drugs is not per se entrapment]; *State v. Hoffman,* 291 N.W.2d 430 (N.D.1980) [befriending defendant, using drugs in defendant's presence, and other "dirty tricks" do not constitute entrapment if not outrageous and unacceptable—it is a technique to gain acceptance in the drug culture]. The jury was correct in determining that the type of "psychological pressure" in this case was not so contrary to public policy as to warrant entrapment.

Overby also contends that the jury did not properly consider that neither Nelson nor the law enforcement agency knew that Overby had been dealing drugs in the past. However, the evidence suggests that both Nelson and the law enforcement agency had some basis of suspecting that Overby would sell Nelson illegal drugs. Nelson testified that although he did not personally see Overby sell cocaine in the past, it was common knowledge—"the word was out to everybody"—that he would. This is a sufficient basis for the undercover operation which targeted Overby.

The jury properly considered the elements of entrapment.

### III. Self-Incrimination

At trial, Overby was asked to divulge the names of: (1) people who told him there would be cocaine available, (2)

people who were present when the cocaine in question was being cut, weighed, and sold, and (3) the person from whom he purchased the cocaine. Overby refused to answer these questions. Overby claims that his refusal to answer the questions in the presence of a jury left a bad impression with the jury members. Further, he rationalizes that the Fifth Amendment of the United States Constitution grants him a privilege which protects him from answering questions which are not part of the central issue of the case and which may incriminate him for future prosecution.

Criminal defendants cannot be compelled to testify, but when they voluntarily do so, they waive their constitutional privilege of not being required to give evidence tending to incriminate them in the crime charged, and the waiver includes all other relevant facts because of the necessary connections between those facts. *State v. Hanson,* 73 N.W.2d 135 (N.D. 1955).

The court properly refused to indulge Overby's Fifth Amendment assertion. Overby voluntarily took the stand and testified as to certain facts involving the charges against him, thereby waiving his Fifth Amendment privilege as to any relevant facts associated with the charges. He was charged with Delivery of a Controlled Substance, and testified as to the transaction involving the people who sold him the cocaine, as well as testifying to the presence of others at that sale. Supplying the names of those people would not alone implicate him in another charge because the facts arise out of the same transaction with which he was then charged. In any event, because of the waiver of the Fifth Amendment protection, the questions were within the scope of allowable cross-examination.

The judgment of the trial court is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.