STATE of North Dakota, Plaintiff and Respondent,

v.

Grant H. HENDRICK, Defendant and Appellant.

Cr. No. 375.

Supreme Court of North Dakota.

Jan. 23, 1969.

Wolf, Glaser & Milhollan, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., and Dale H. Jensen, State's Atty. for Burleigh County, Bismarck, for plaintiff and respondent.

ERICKSTAD, Judge.

On October 1, 1968, a Burleigh County jury found the defendant, Grant H. Hendrick, guilty of the crime of escape from imprisonment. Upon the return of that verdict the district court executed judgment sentencing Mr. Hendrick to imprisonment in the state penitentiary for a term of 2 years less 70 days, to commence at the termination of the sentence he had previously received upon conviction of the crime of robbery in the first degree, the latter term having been for not less than 5 years nor more than 15 years, commencing October 3, 1966.

It is from the judgment entered upon the verdict of guilty of the crime of escape from imprisonment that Mr. Hendrick now appeals.

He concedes that the evidence amply supports his conviction but asserts that the

judgment should be set aside because of errors of law committed by the trial court. For this reason he has not supplied this court with a transcript of any of the testimony given at the trial. He asserts that the court erred (1) in failing to grant his motion for mistrial and (2) in failing to grant his motion in arrest of judgment. We shall first consider specification of error No. 1.

Apparently following the roll call of the entire jury panel but before the selection of the jury in this case a motion for mistrial was made out of the hearing of the prospective jurors on the ground that while they were seated in the courtroom Mr. Hendrick was brought into the courtroom, in full view of the prospective jurors, dressed in prison garb.

The garb was described by his counsel as "being a white coverall, with some dirt on it, wrinkled to some extent, with apparently no undergarments underneath it." Mr. Hendrick was described as wearing tattered shoes with no socks.

Instead of granting the motion for mistrial the court granted the State's motion for a recess so that Mr. Hendrick could *obtain proper clothing and return to the* courtroom properly dressed.

When Mr. Hendrick, properly dressed, returned to the courtroom after recess, the roll of the entire jury panel was again called, and thereafter twelve prospective jurors were called. The record does not disclose what questions were asked the prospective jurors by Mr. Hendrick's counsel, but it does indicate that his counsel passed peremptory challenge, which means that he did not exercise all peremptory challenges permitted by statute.

Mr. Hendrick does not base his claim for a mistrial on statutory law but instead bases his claim on encyclopedia law and on a 5th Circuit case asserted to support that law.

We are referred to 21 Am.Jur.2d Criminal Law § 239 (1965), which reads:

§ 239. Trial of defendant in prison garb.

Since the defendant, pending and during his trial, is still presumed innocent, he is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require. He is therefore entitled to wear civilian clothes rather than prison clothing at his trial. It is improper to bring him into the presence of the jury which is to try him, or the venire from which his trial jury will be drawn, clothed as a convict. (footnotes omitted)

The 5th Circuit case relied upon by Mr. Hendrick is that of Brooks v. Texas. In it the court said:

It is inherently unfair to try a defendant for crime while garbed in his jail uniform, especially when his civilian clothing is at hand. No insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument. * * *

Brooks v. Texas, 381 F.2d 619, 624 (5th Cir. 1967).

It should be noted that the foregoing statement was made without reference to any authority.

In *Brooks* the Circuit Court of Appeals reversed the judgment because the defendant was denied effective assistance of counsel. Brooks was dressed in his jail uniform throughout his trial without an objection being registered by his counsel, but more than that, his trial counsel failed to adequately prepare for his only possible defense, that of insanity. It was this latter failure on the part of counsel that the court stressed in reversing the judgment.

In the instant case Mr. Hendrick was attired in his prison garb only briefly and only before the commencement of the selection of the jury. In *Brooks* at the very opening of the trial the prosecutrix identi-

fied the defendant by pointing at him while he was in his white uniform, and the assistant district attorney noted for the record that the person in the white uniform was the defendant.

The facts in *Brooks* are so different from the facts in this case that the rule in *Brooks* would not necessarily apply to require reversal in the instant case.

One of the most recent decisions we have been able to find on this issue is that of People v. Shaw, 7 Mich.App. 187, 151 N. W.2d 381 (1967). In that case the Michigan court was urged, as we are urged, to adopt the rule of law stated in 21 Am.Jur. 2d Criminal Law § 239.

The Michigan court in *Shaw* discussed the three cases cited in Am.Jur.2d in support of the rule, and distinguished each case from the facts in *Shaw*. In *Shaw* the jury observed the defendant twice in prison garb before objection was made. The court commented:

It is easily deduced that defense counsel in making objection when he did, permitted the jury to observe defendant for a second time in jail garb.

People v. Shaw, supra, 384.

Accordingly, the court found that the objection to the right of defendant Shaw to appear in ordinary clothing was not timely made. Notwithstanding that feature in *Shaw*, the court concluded:

Finally, in the language of People v. Ritholz, [359 Mich. 539, 103 N.W.2d 481 (1960)], we are not persuaded that the error complained of was so gross as to have deprived defendant of a fair trial, that his conviction was, in truth, a miscarriage of justice.

People v. Shaw, supra, 385.

That conclusion was based on decisions earlier cited and quoted as follows:

In People v. Kasem (1925), 230 Mich. 278, at p. 290, 203 N.W. 135, at p. 139, the Michigan Supreme Court stated,

"We have no right to reverse a conviction, unless we are satisfied that there was such error committed on the trial as deprived the defendant of substantial rights or resulted in a miscarriage of justice." and in People v. Ritholz (1960), 359 Mich. 539 on p. 559, 103 N.W.2d 481, on p. 490, Mr. Justice SMITH stated: "We must be persuaded that the errors complained of were so gross as to have deprived defendant of a fair trial, that his conviction was, in truth, a miscarriage of justice." * * *

People v. Shaw, supra, 384.

It should be noted that we have a statute similar in meaning to the Michigan rule stated in *Kasem:*

29–28–26. Technical errors to be disregarded on appeal.—After hearing an appeal, the supreme court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties.
North Dakota Century Code.

See: State v. Moe, 151 N.W.2d 310, 320 (N.D.1967).

In State v. Hashimoto, 47 Hawaii 185, 389 P.2d 146 (1963), it was asserted by the defendants that the trial court erred in denying their motion for mistrial made immediately after the jury had been sworn, which motion was based on the contention that the defendants were prejudiced before the jury because the guards, in full uniform, brought the defendants into the courtroom handcuffed to each other in full view of the jury. As to whether the jurors had actually seen the defendants handcuffed together, the trial court was in doubt. The Hawaii Supreme Court commented that the jury was not polled in this regard. Concerning the voir dire examination it said:

As a matter of fact, if, as represented to the court, there was so much concern about the guards and handcuffs, it would seem that the defense would have touched

upon the subject during the voir dire examination of the prospective jurors to ascertain their attitude in respect to the circumstance. But, as reflected by the record, not one of the several defense counsel examined the jurors on that point.

State v. Hashimoto, supra, 152.

In the instant case the record does not disclose what questions were asked or what answers were given by the prospective jurors during the voir dire examination, but it does disclose that counsel for Mr. Hendrick did not exhaust his peremptory challenges, and no contention is made on this appeal that counsel for Mr. Hendrick attempted to determine during the voir dire examination whether the jurors had seen Mr. Hendrick in his prison garb, or, if they had seen him in his prison garb, what their attitude was in respect thereto.

In closing their discussion of that aspect of the case in *Hashimoto* the Supreme Court said:

This court repeats that pleadings and statements made by counsel to the court are not self-proving, and that there is no reversible error in the absence of a showing that the court clearly abused its discretion or that defendants were actually prejudiced before the jury. State v. Brooks, [44 Hawaii 82, 352 P.2d 611 (1960)].

State v. Hashimoto, supra, 152.

The Kansas Supreme Court has held that the mere inadvertent bringing of a defendant into the courtroom in prison garb when no prejudice therefrom was shown did not justify the granting of a new trial:

As to the argument the defendant was brought into the courtroom in prison garb, it seems he was brought in the courtroom in a coat with the word "Prisoner" on it. At the suggestion of counsel for defendant, he was removed at once and returned properly clad. It was obviously a mere inadvertence. No or-

der of the trial court was involved and certainly no prejudice shown.

State v. Woods, 179 Kan. 601, 296 P.2d 1114, 1116 (1956).

A case closely resembling the instant case is that of People v. Garcia, 124 Cal.App.2d 822, 269 P.2d 673 (1954), cert. denied 348 U.S. 901, 99 L.Ed. 708, 75 S.Ct. 225, cert. denied 350 U.S. 1000, 100 L.Ed. 864, 76 S. Ct. 554. The California District Court of Appeal stated the facts to be as follows:

From the evidence it appears that while the jury panel was in the courtroom defendant's case was called and defendant was, at that time, dressed in a blue denim shirt and trousers; that there was some writing on each, marked "County Jail"; that counsel, out of the presence of the jurors, asked the trial judge to discharge the entire panel because of the prejudice that resulted in the minds of the jurors in general, and because of their knowledge that defendant was then confined in jail. This request was denied. However, the court ordered that thereafter the defendant be dressed in an ordinary suit of clothes. This order was followed throughout the rest of the trial.

People v. Garcia, supra, 674.

In finding no prejudicial error in the trial court's denial of the motion to discharge the entire panel the court of appeal said:

The jurors were subsequently examined by counsel for defendant and it does not appear which, if any, of such jurors noticed the writing on the clothing or that any juror was influenced or challenged by reason of that fact or that defendant exhausted his peremptory challenges. Defendant accepted the jurors after examination for cause, and it does not affirmatively appear that a fair and impartial trial could not be had by the jurors called. No prejudicial error resulted. [citations omitted]

People v. Garcia, supra, 674–675.

■ The situation in this case parallels the situation in *Garcia* in that the jurors were examined after the denial of the motion for mistrial by counsel for Mr. Hendrick, and it does not appear which, if any, of the jurors noticed the presence of Mr. Hendrick in court in his prison garb, or that any juror was influenced or challenged by reason of that fact, or that Mr. Hendrick exhausted his peremptory challenges. Likewise, it does not affirmatively appear in this case that Mr. Hendrick did not have a fair and impartial trial.

For reasons similar to those stated in *Garcia*, we conclude that Mr. Hendrick was not prejudiced by his brief appearance in court in prison garb. For further encyclopedic and case law on this subject see 24A C.J.S. Criminal Law § 1898 (1962) and pocket parts.

We shall now consider specification of error No. 2, which is that the court erred in failing to grant the motion in arrest of judgment.

The motion in arrest of judgment was made before sentencing but after the rendition of the jury's verdict, which found the defendant guilty of the offense as charged in the criminal information. The motion was made on the ground that the facts stated in the information did not constitute a public offense, in that it failed to assert that Mr. Hendrick escaped from prison "with intent to escape therefrom" as required by N.D.C.C. § 12–16–05. The pertinent part of that section reads:

12–16–05. Escape or attempted escape from prison—Punishment.—Any person confined in any prison upon a charge, arrest, commitment, or conviction for a felony who shall escape from or break said prison with intent to escape therefrom, or who shall attempt by force or fraud or in any other manner to escape from said prison, whether such escape is effected or not, shall be guilty of a felony, and if such escape or attempted escape shall be made from a penitentiary, he shall be subject to imprisonment therein for a term not more than double the term for which he originally was sentenced, to commence upon the expiration of his former sentence. * * *

North Dakota Century Code.

The information asserts that Mr. Hendrick "did commit the crime of escape from imprisonment committed in the manner following, to-wit:

"That at the time and place the said defendant did then and there wilfully and unlawfully escape from imprisonment on July 31, 1968, after having been sentenced on October 3, 1966, to a term of five (5) to fifteen (15) years in the State Penitentiary, on the charge of robbery in the first degree."

Mr. Hendrick cites in support of his contention that the information should have stated that he escaped with intent to escape and that such an omission was a jurisdictional defect the case of State v. Mutschler, 55 N.D. 120, 212 N.W. 832 (1927).

In *Mutschler* the information charged that the defendant did "willfully, unlawfully, and feloniously set fire to and burn, in the nighttime, a certain dwelling house." Motion was made in arrest of judgment on the ground that the information did not state facts sufficient to constitute a public offense.

In considering whether the trial court erred in denying the motion in arrest of judgment the Supreme Court of this state, speaking through District Judge Lowe, said:

Our Legislature has seen fit to change the crime of arson from the common-law definition by adding the mental element that there must be an intent to destroy a building, and has definitely settled the law that it is not arson unless there is an intent to destroy a building, and has made the "intent to destroy" a necessary ingredient in addition to the other neces-

sary element of "willful (intentional) * * * burning."

* * * Therefore the argument with respect to malice would be equally weighty as to an intent to destroy; and it is a necessary element of the offense, and must be pleaded in the information. If the intent was merely to burn a building, then the word "willfully" in the information would be sufficient; but the crime is narrower than that.' '* '·*·' '*·'

State v. Mutschler, supra, 834.

In light of N.D.C.C. § 29–01–29 we are of the opinion that the court's decision in *Mutschler* was overtechnical and not in accord with the liberal construction required by that section of our code, which reads:

> 29–01–29. Rule of construction of title.—The rule of the common law that penal statutes are to be strictly construed has no application to this title. This title establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to promoting its objects and in furtherance of justice.

North Dakota Century Code.

We believe that the offense was properly charged in the instant case, even though the information did not assert that Mr. Hendrick escaped from prison "with intent to escape therefrom."

Because the word *escape* connotes an attitude of mind as well as an act, and that attitude of mind requires an intent to avoid lawful confinement or custody, the criminal information was sufficient, although the words *with intent to escape therefrom* were not contained in it.

In Gallegos v. People the Supreme Court of Colorado said:

> It seems to us that the very word "escape" connotes an attitude of mind as well as an act. One does not "escape" without desire and intent to avoid confinement. * * *

Gallegos v. People, 159 Colo. 379, 411 P.2d 956, 960 (1966).

Mr. Gallegos was tried on a charge of felonious escape under a statute which did not specifically describe as an element of the offense intent to evade the due course of justice. The trial court accordingly refused to admit in evidence testimony bearing on Gallegos's mental condition and also refused to give tendered instructions on intent and insanity. The Colorado Supreme Court, in finding this to be error, said:

> We hold that the felony of escape has as a necessary element the *intent* of the accused to evade the due course of justice. People v. Weisman, 280 N.Y. 385, 21 N.E.2d 362; State v. Pace, 192 N.C. 780, 136 S.E. 11. See also 30A C.J.S. Escape § 6b. Hence, the trial court should have advised the jury that an escape is the voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice.

Gallegos v. People, supra, 960.

We believe that the allegation of escape from prison in the instant case carried with it the meaning that the defendant departed with intent to avoid confinement.

Pertinent to this issue, the trial court, after reading the charge from the information, said in the instructions:

> The law which the defendant is charged with having violated, so far as is material, is as follows:
>
> "Any person confined in any prison upon a conviction for a felony who shall escape from said prison, with intent to escape therefrom, shall be guilty of a felony."

Later in the instructions the court said:

> You are instructed, Members of the Jury, that if you find from all the evidence in the case beyond a reasonable doubt that the defendant, Grant H. Hen-

drick, on or about the 31st day of July, 1968, in the County of Burleigh and State of North Dakota, did escape from the penitentiary, with intent to escape therefrom, while serving a sentence for a felony, then your verdict will be that of guilty.

Although we have not been provided with a transcript of the testimony at the trial and thus do not know whether the defendant attempted to show that he did not intend to escape when he departed from prison or custody, we note that no contention has been made on appeal that the trial court refused to admit in evidence testimony bearing on mental condition or intent.

Section 29–11–10 sets forth the requirements of an information. It reads:

29–11–10. Charging the offense.— The indictment or information may charge, and is valid and sufficient if it charges, the offense or offenses for which the defendant is being prosecuted in one or more of the following ways:

1. By using the name given to the offense or offenses by a statute or statutes and sufficient particulars to give the court and the defendant notice of the offense or offenses to be charged;

2. By stating so much of the definition of the offense or offenses in terms of the statute or statutes defining the offense or offenses, or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of the offense or offenses which are intended to be charged.

The indictment or information may refer to a section or subsection of any statute or statutes creating the offense or offenses charged therein and, in determining the validity or sufficiency of such indictment or information, regard shall be had to such reference.

North Dakota Century Code.

The information in the instant case contains the name given to the offense by the statute and sufficient particulars to give the court and the defendant notice of the offense intended to be charged.

No motion for a bill of particulars was made by either the defendant or the court under § 29–11–11, which reads:

29–11–11. Bills of particulars.— When an indictment or information charges an offense in accordance with the provisions of section 29–11–10, but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court of its own motion may order, and at the request of the defendant shall order, the state's attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the state's attorney, of his own motion, may furnish such bill of particulars.

North Dakota Century Code.

We conclude, in light of (1) the fact that inherent in the word *escape* is the meaning that departure is with intent to avoid lawful confinement or custody, and (2) the fact that the trial court's instructions required the jury to find that the defendant escaped with intent to escape, that the trial court properly denied Mr. Hendrick's motion in arrest of judgment.

As Mr. Hendrick has failed to show wherein he was prejudiced or wherein he was deprived of a fair and impartial trial, the judgment of the trial court is affirmed.

TEIGEN, C. J., and STRUTZ, PAULSON and KNUDSON, JJ., concur.