STATE of North Dakota, Plaintiff and Appellee,

v.

Kenneth MURCHISON, Defendant and Appellant.

Cr. No. 950106.

Supreme Court of North Dakota.

Dec. 29, 1995.

---

Patricia L. Burke (argued), State's Attorney, Bismarck, for plaintiff and appellee.

LaRoy Baird, P.C., Bismarck, for defendant and appellant; argued by Ross H. Espeseth.

MESCHKE, Justice.

Kenneth Murchison appeals from a jury verdict finding him guilty of delivery of marijuana. We affirm.

In June 1993, the North Dakota Bureau of Criminal Investigation (Bureau) hired Harold Wolff to buy drugs undercover in the Bismarck area. A mutual friend introduced Wolff to Murchison in July. On August 6, 1993, Wolff went to Murchison's apartment to buy some marijuana. Murchison told Wolff that he did not have any, and suggested Wolff come back later that night. When Wolff returned, Murchison sold him five "joints." On April 14, 1994, Murchison was arrested for that delivery of a controlled substance.

Murchison's first attorney, Marvin Hager, filed a demand for a speedy trial on April 28, 1994. At Murchison's request, Hager was removed as his attorney on May 4, 1994. Two weeks later, Murchison's second attorney, Wayne Goter, was replaced because of a potential conflict of interest. A third attorney, Ross Espeseth, represented Murchison at his preliminary hearing on June 21, 1994, and at his arraignment on August 15, 1994.

While Murchison awaited trial for this drug charge, he was convicted in September 1994 of unrelated crimes: two felony counts of terrorizing, one felony count of aggravated assault, and one misdemeanor count of assault. The trial court sentenced Murchison to six years in prison for these convictions.

On October 13, 1994, Murchison was notified that trial of this drug case would begin March 28, 1995. On February 17, 1995, Murchison moved to dismiss, alleging the delay between his arrest and trial violated his right to a speedy trial. The trial court denied dismissal, ruling that the delays "were either caused by [Murchison] or have not been substantiated to have caused prejudice to him."

At his trial on March 28–29, 1995, Murchison admitted to selling marijuana to Wolff, but claimed entrapment. The jury found Murchison guilty, and the trial court sentenced him to thirty months in prison, consecutive to his prior six-year sentence. Murchison appeals.

On appeal, Murchison argues: (1) the delay from his arrest to trial violated his right to a speedy trial; (2) the trial court abused its discretion in allowing a plainclothes officer to sit behind Murchison, but in front of the railing, during the trial; (3) the Bureau's compensation scheme for Wolff established entrapment as a matter of law, and violates public policy; and (4) the trial court erred in allowing the jury to hear evidence of Murchison's September 1994 convictions. We reject Murchison's first three contentions, but we agree that the trial court abused its discretion in admitting evidence of Murchison's 1994 convictions. Still, because this error was harmless, we affirm.

1. *Speedy Trial.*

Murchison argues that the delay between his demand for a speedy trial on April 28, 1994, and his trial on March 28, 1995, denied him a speedy trial. We disagree.

■ The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution, Article I, § 12 of the North Dakota Constitution, and NDCC 29–01–06(5).[1] The United States Supreme Court designates four factors for analyzing a speedy trial claim: length of the delay, reason for the delay, proper assertion of the right, and actual prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 531–33, 92 S.Ct. 2182, 2192–94, 33 L.Ed.2d 101 (1972); *see also State v. Sahr*, 470 N.W.2d 185, 187 (N.D.1991). As we explained in *State v. Connery*, 441 N.W.2d 651, 655 (N.D.1989), each factor must be weighed, but "no single factor is controlling."

■ Murchison argues that the "delay in bringing this case to trial was excessive, and it should be determined on that basis alone that [he] was denied his right to a speedy

---

1. Also, the Uniform Mandatory Disposition of Detainers Act grants a prisoner the right to have any pending criminal action brought to trial within ninety days of a written request, unless extended for good cause or by stipulation.

NDCC 29–33–03. However, that right does not exist here because Murchison did not make a written request under NDCC 29–33–01 after he was imprisoned in September 1994.

trial." Although the delay of nearly one year from Murchison's arrest to trial was significant, we have explained that "the length of the delay is not controlling by itself." *State v. Wunderlich*, 338 N.W.2d 658, 661 (N.D. 1983). This delay was not presumptively prejudicial.

The reason for the delay is another factor to consider. There is no indication that the prosecution purposefully delayed the trial to hinder Murchison's defense. *See Connery*, 441 N.W.2d at 656. Rather, Murchison's two attorney changes contributed. *See State v. Runck*, 418 N.W.2d 262, 265–66 (N.D.1987) (new attorney request is relevant to speedy trial claim). Furthermore, intervening court proceedings, especially Murchison's September 1994 trial and convictions, added to the delay.

Although Murchison clearly asserted his right to a speedy trial by the demand on April 28, 1994, actual prejudice to him from the delay is not apparent. Prejudice, the fourth factor, can take three forms: "oppressive pretrial incarceration," "anxiety and concern" caused by the delay, and an impaired defense. *State v. Dilger*, 338 N.W.2d 87, 92 (N.D.1983) (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193). While Murchison was in jail for much of the time before his trial on this drug charge, the jail time is unrelated because Murchison began serving it for the separate 1994 convictions on September 16, 1994. Thus, almost seven months of his incarceration was unrelated to this case. "Oppressive pretrial incarceration" did not occur here.

Like the defendant in *Dilger*, Murchison only makes "conclusory allegations" that the delay caused him anxiety and concern. *Id.* He has also failed to differentiate his anxiety and concern for this delay from that for his September 1994 trial, convictions, and sentence. What is more, Murchison's failure to invoke NDCC ch. 29–33, *see* n. 1 ante, which might have produced a trial within ninety days, contradicts his claim that he actually suffered additional anxiety.

Murchison argues that, "[w]hile being hard to define and identify in a quantitative manner, the lengthy delay in bringing [him]

to trial affected his ability to defend himself." Murchison, however, has not demonstrated that the delay caused any evidence or testimony to be lost, or impaired his defense in another way. Conclusory allegations of an impaired defense from a delayed trial do not prove prejudice. *See Dilger*, 338 N.W.2d at 92–93. Murchison has not shown any substantial impairment to his defense.

The "absence of prejudice substantially weakens [a] speedy trial claim." *Sahr*, 470 N.W.2d at 188. The absence also distinguishes this case from *State v. Presbuch*, 366 N.W.2d 794, 796 (N.D.1985), where we affirmed a dismissal of a misdemeanor traffic charge after a two-year delay because of the "obvious" prejudice to the accused, whom the Air Force had transferred to Germany. From our consideration of the relevant factors, we conclude that Murchison was not denied his right to a speedy trial.

*2. Plainclothes Officer.*

Murchison was brought into the courtroom for trial in shackles that deputies removed before the jury entered. However, acting on statements that Murchison made to deputies as they brought him to court, the trial court granted the prosecution's request that a plainclothes deputy sit directly behind Murchison, but in front of the railing, during trial. Murchison, stating that he "had been in trial previously with the same trial judge, and there had been no problem," argues that the court abused its discretion when it allowed the deputy to sit behind him in front of the railing. We disagree.

"A trial court has great latitude and discretion in conducting a trial," *State v. Erban*, 429 N.W.2d 408, 413 (N.D.1988), and "we are unwilling to 'second-guess' the trial court in matters which depend upon the trial judge's observations of the proceeding." *Hansen v. Winkowitsch*, 463 N.W.2d 645, 647 (N.D.1990). We will not question the trial court's decision about courtroom safety absent a showing that the court's actions prejudiced the accused's right to a fair and impartial trial. *See State v. Hendrick*, 164 N.W.2d 57 (N.D.1969) (affirming, for lack of prejudice, denial of mistrial motion after jury mo-

mentarily viewed defendant in "prison garb"). The trial court must be able to maintain order and ensure courtroom safety.

■■■ Murchison argues that by "placing a deputy sheriff directly behind [him] inside the rail, it was obvious to the members of the jury that [Murchison] was being denied fundamental rights." But a conclusory assertion of prejudice is not enough for us to interfere with the trial court's discretion in securing the courtroom. Nothing here shows that any of the jurors noticed the presence of the officer or understood his role, much less indicates that the officer's presence influenced the jury in any way. *See Hendrick*, 164 N.W.2d at 62. We decline to find an abuse of discretion based upon an unsubstantiated allegation of prejudice.

3. *Entrapment.*

Murchison argues that there was "insufficient evidence for the jury to conclude that [Murchison] was not entrapped." We disagree.

Our legislature recently amended the definition of entrapment. 1993 N.D.Laws ch. 117, § 1. This amended version applies here because it took effect on August 1, 1993, five days before this drug sale. The amendment redefined the affirmative defense of entrapment:

> A law enforcement agent perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, the law enforcement agent induces or encourages and, as a direct result, causes another person to engage in conduct constituting such a crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who

is ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

NDCC 12.1–05–11(2). Before the amendment, the first sentence of NDCC 12.1–05–11(2) (1985) read: "Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense." We had interpreted this language to create an "objective test" for entrapment, with the "focus" being "on the conduct of law enforcement officials and the effect it would have on the normally law-abiding citizen." *State v. Kummer*, 481 N.W.2d 437, 441 (N.D.1992). As we explained in *State v. Brooks*, 520 N.W.2d 796, 801 (N.D.1994), the accused's predisposition to commit the crime was irrelevant under this "objective test." That is no longer so.

In amending NDCC 12.1–05–11, the legislature replaced the wording that defined entrapment conduct as that "likely to cause normally law-abiding persons to commit the offense," with wording that defined entrapment conduct as that "creat[ing] a substantial risk that such crime will be committed by a person other than one who is ready to commit it." This new wording appears to make more relevant an accused's subjective predisposition to commit the crime, although the new wording does not shift the focus completely away from the law-enforcement conduct.[2] However, sufficient evidence supports this jury's verdict that Murchison was not entrapped under a more subjective standard, as well. Therefore, we need not assess the full impact of the change.

■■■ In reviewing a "factual conclusion that entrapment did not occur, we do not weigh conflicting evidence, nor do we judge

---

2. The legislative history of the 1993 amendment confirms an intention to make the accused's criminal predisposition a relevant factor. For example, Senator Nalewaja, co-sponsor of the amendment, testified before a Senate committee that the legislation

> amends the statute to change from the present "objective" test to the "subjective" test which would make North Dakota consistent with the United States Supreme Court and the majority of the states. The subjective test ... would allow juries to hear all evidence from both

prosecution and defense witnesses a[n]d would appear to be a fairer test than the objective test which focuses primarily on the methods of law enforcement and not on any predisposition of the defend[a]nt to commit the illegal act.

*Hearing on SB 2171 and SB 2058 Before the Senate Judiciary Committee* 1 (January 13, 1993) (testimony of Sen. Donna Nalewaja). *See also* Doug Nesheim, Comment, *Criminal Law—Entrapment: Illegal Police Conduct Gets Stung by the Entrapment Defense in State v. Kummer*, 69 N.D.L.Rev. 969, 993–96 (1993).

the credibility of witnesses; instead, we look only to the evidence and its reasonable inferences most favorable to the verdict to see if substantial evidence exists to warrant a conviction." *State v. Nehring,* 509 N.W.2d 42, 44 (N.D.1993). Substantial evidence supports this conviction.

▮ The alleged "entrapment" in this case largely consisted of Wolff befriending Murchison and inviting the sale. Wolff also admitted that he used marijuana with Murchison. Prior precedents applying the "objective" standard have explained that entrapment requires more than exploitation of a friendship. *See State v. Overby,* 497 N.W.2d 408, 414 (N.D.1993) (collecting cases). In *State v. Hoffman,* 291 N.W.2d 430, 431–32 (N.D.1980), a factually similar case, we affirmed a jury's rejection of an entrapment defense where the informants befriended members of a "drug subculture," used drugs in their presence to gain their trust, and "put a great deal of pressure" on Hoffman to make the drug sale. Here, as in *Hoffman, id.* at 432, Wolff's actions may have "constituted trickery and deception, but [they] were not of the outrageous and unacceptable nature that § 12.1–05–11, N.D.C.C., is designed to prevent."

Under the more subjective standard of amended NDCC 12.1–05–11(2) that makes more relevant the accused's criminal predisposition, there is substantial evidence that Murchison was predisposed. An audio recording of this drug deal, in evidence, shows that Murchison had decided to sell some of the marijuana before Wolff asked to buy, and thus evidences Murchison's predisposition to commit this crime.

▮ Murchison argues that the Bureau's "payment scheme" for Wolff "established entrapment as a matter of law, was contrary to public policy and violated the due process rights of [Murchison]." We disagree.

▮ Entrapment is almost invariably a question of fact, and a court can only "find entrapment as a matter of law where the facts and their inferences supporting a finding of entrapment are undisputed." *Nehring,* 509 N.W.2d at 45. Here, it is undisputed that the Bureau paid Wolff $1,200 month-

ly, and gave him $200 weekly for expenses. The Bureau also paid him $75 for each person he was able to buy drugs from, and an additional $200 if they eventually charged that person with the crime. In addition, the Bureau gave Wolff a motorcycle and kept it repaired, paid his auto, motorcycle, and renter's insurance, and gave him $1,000 for a downpayment on a car. These facts, however, do not establish entrapment as a matter of law.

The fact that Wolff received a fee for each person he induced to sell drugs, and an additional fee if charges were filed against that person, is not dispositive. These fees are not exorbitant, and are not contingent upon a conviction, so neither the amount nor the nature of the fees poses a risk of perjury or improper inducement by Wolff. In *Kummer,* 481 N.W.2d at 442, the only case where we have previously found entrapment as a matter of law, we explained that "[w]hen the police themselves violate the law in order to induce a crime, they employ unlawful means." This payment scheme did not violate any state or federal law, and there is no evidence of intolerable or outrageous government conduct that would prompt us to reverse Murchison's conviction for a public policy reason.

### 4. *Prior Convictions.*

Murchison argues that the trial court abused its discretion by allowing the jury to hear evidence of Murchison's September 1994 convictions for felony terrorizing and felony aggravated assault. Although we agree, we decline to reverse the conviction because, under NDRCrimP 52(a), the error was harmless.

▮ The admissibility of prior convictions for impeachment is governed by NDREv 609(a):

(a) **General Rule.** For the purpose of attacking the credibility of a witness, (i) evidence that a witness other than an accused has been convicted of a crime must be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted,

and evidence that an accused has been convicted of such a crime must be admitted if the court determines that the probative value of admitting that evidence outweighs its prejudicial effect to the accused; and (ii) evidence that any witness has been convicted of a crime must be admitted if it involved dishonesty or false statement, regardless of the punishment.

A prior conviction is admissible under part (ii) of this rule if it "bears directly upon the accused's propensity to testify truthfully," involves "deception or misrepresentation, or carr[ies] with it a tinge of falsification." *State v. Eugene,* 536 N.W.2d 692, 694 (N.D. 1995). Terrorizing and aggravated assault do not fit these criteria. Therefore, the trial court could only admit Murchison's 1994 convictions into evidence if the court, under NDREv 609(a)(i), properly determined that the probative value of the convictions outweighed their prejudicial effect to the accused.

▮ To weigh probative value and prejudicial effect in this setting, a trial court must consider, among the relevant factors, the " 'impeachment value of the prior crime, the point in time of the conviction and the witness's subsequent history, the similarity between the past crime and the charged crime, the importance of the defendant's testimony and the centrality of the credibility issue.' " *State v. Gefroh,* 495 N.W.2d 651, 656–57 (N.D.1993) (quoting *State v. Fuller,* 379 N.W.2d 289, 290 (N.D.1985)). As we explained in *Eugene,* 536 N.W.2d at 695, the trial court should "explicitly articulate its balancing process" in the record so this Court can effectively review whether it properly admitted a prior conviction.

▮ Although we prefer the trial court to articulate expressly how it balanced the relevant factors, it is often enough for the court to hold a brief hearing and to make an explicit finding on the record that demonstrates the trial court did not just apply NDREv 609(a)(i) mechanically. *See State v. Bohe,* 447 N.W.2d 277, 281 (N.D.1989); *State v. Fuller,* 379 N.W.2d 289, 290 (N.D.1985). A trial court abuses its discretion if the record does not "show that the trial court meaningfully or appropriately considered the rele-

vant factors" when it weighed the prior conviction's probative value and prejudicial effect. *Eugene,* 536 N.W.2d at 695. In *Eugene* at 695–96, we concluded that the trial court failed to provide an "adequate explanation" for us to determine if it "appropriately exercised its discretion in admitting the prior convictions" because the court "provide[d] very little information about its decision process."

Here, the jury heard about Murchison's 1985 felony robbery and 1986 felony terrorizing convictions. Then, out of the jury's presence, Murchison moved to preclude the prosecution from using any convictions after August 6, 1993. Murchison argued that evidence of his 1994 convictions would be "blatantly prejudicial." The prosecution argued that Murchison's 1994 convictions were equally probative because he was defending on entrapment and these convictions also showed that he was "predisposed to committing crimes." The trial court denied Murchison's motion.

▮ The trial court's ruling did not mention the necessary factors, much less "expressly articulate" how it balanced those factors. The court did not mention the decreased impeachment value of terrorizing and assault convictions, their lack of similarities to a drug charge, the importance of Murchison's testimony to his defense, or the importance of his credibility. As in *Eugene,* 536 N.W.2d at 696, "the trial court failed to provide an adequate explanation for us to conclude it appropriately exercised its discretion" in admitting Murchison's 1994 convictions under NDREv 609(a)(i) for impeachment.

▮ As *Eugene* explained, our objective in reviewing non-constitutional trial error is to "determine whether the error was so prejudicial that substantial injury occurred and a different decision would have resulted without the error." *Id.*; *see also Bohe,* 447 N.W.2d at 282. If not, it is "harmless error" under NDRCrimP 52(a) and is not ground for reversal. In *Eugene,* we concluded that the court's failure to adequately explain its decision was harmless error because the erroneously admitted burglary conviction was

introduced after the jury heard evidence of another burglary conviction that Eugene did not object to, and because the references to the prior conviction were very brief.

 Here, the jury had appropriately heard evidence of Murchison's 1985 robbery and 1986 terrorizing convictions. Thus, the later use of the 1994 convictions "did not likely have a substantial prejudicial effect." *Eugene*, 536 N.W.2d at 696. Also like *Eugene*, Murchison's 1994 convictions were mentioned only briefly during the state's cross-exam of Murchison, and no "embellishment or details about the convictions were brought before the jury, either by evidence or by argument of counsel." *Id.*

Even less prejudice is apparent here than in *Eugene*. Unlike Eugene's prior burglary conviction, Murchison's erroneously admitted prior convictions were not similar to the charged crime, so they did not create a "heightened danger" that the jury would use them for more than impeachment. *See Eugene* at 695–96 (collecting cases finding enhanced danger of misuse when prior conviction is similar to charged crime). Other circumstances here also make it unlikely that the erroneously admitted prior convictions had any affect on the jury's decision. Because Murchison admitted he sold the marijuana, the jury could not have used Murchison's 1994 convictions as "bad character" evidence to improperly infer that he also committed the charged crime.

For his entrapment defense, Murchison relied on Wolff's conduct in soliciting the sale, and on the Bureau's payment scheme for Wolff. Thus, the only prejudice might be if the jury used the 1994 convictions to reject the entrapment defense because they believed the convictions showed he was "predisposed" to commit the drug sale. Even so, the prejudice would be slight under the new, more subjective entrapment definition, since other evidence clearly showed that Murchison had planned to sell some of the marijuana before Wolff asked to buy any. It is unlikely that the 1994 convictions were a serious factor in the jury's rejection of Murchison's entrapment defense.

Murchison has not convinced us that a "different decision would have resulted" ab-

sent the brief reference to the 1994 convictions. *Eugene*, 536 N.W.2d at 696. Therefore, the trial court's error in admitting them was harmless.

We affirm Murchison's conviction.

VANDE WALLE,C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, Justice, concurring specially.

Ordinarily, I believe the erroneous admission of prior convictions is prejudicial error. *See State v. Eugene*, 536 N.W.2d 692 (N.D. 1995) (Levine, J., dissenting); *State v. Bohe*, 447 N.W.2d 277 (N.D.1989) (Levine, J., dissenting). I concur with the majority here only because Murchison raised an entrapment defense. When a defendant claims entrapment in a jurisdiction applying a subjective entrapment test, the government may rebut this defense with prior conviction evidence relevant to the defendant's predisposition to commit the offense. *See United States v. Bastanipour*, 41 F.3d 1178 (7th Cir.1994); *United States v. Simtob*, 901 F.2d 799 (9th Cir.1990); *United States v. Parrish*, 736 F.2d 152 (5th Cir.1984); *United States v. Salisbury*, 662 F.2d 738 (11th Cir.1981); *United States v. Apuzzo*, 555 F.2d 306 (2d Cir.1977); *United States v. Demetre*, 464 F.2d 1105 (8th Cir.1972); *see also Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 5.2 at 420 (1984).