2002 ND 102

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John Lee STEWART, Defendant and Appellant.**

**Nos. 20010283, 20010284.**

Supreme Court of North Dakota.

July 11, 2002.

William Robert Hartl, Rugby, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] John Lee Stewart appealed from two criminal judgments entered on jury verdicts finding him guilty of driving under the influence of liquor or drugs and aggravated reckless driving. We conclude evidence of Stewart's prior felony convictions was admissible and there was sufficient evidence Stewart was under the influence of alcohol while driving a vehicle. We affirm.

## I

[¶ 2] Stewart rolled his car north of Bottineau on October 10, 2000. Mike Krogen and Stewart's brother, Mitch Laframboise, were passengers in the car. When a deputy sheriff and medical personnel arrived at the accident scene, Krogen was unconscious. Krogen later died from injuries received in the accident. Neither Stewart nor Laframboise would indicate who was driving the vehicle and investigators were unable to learn who the driver was until a few days later. After a jury trial, Stewart was convicted of driving under the influence of liquor or drugs and aggravated reckless driving. Stewart appealed the criminal judgments.

## II

[¶ 3] Stewart contends the trial court abused its discretion in admitting three felony convictions into evidence. Stewart testified in his defense. On direct examination, he testified he had one alcoholic drink, a "Jim Beam and coke," on October 10, 2000, with dinner, "about 7:00, 7:30," and that he made the drink, which contained "about the same as one or two shots" of alcohol.

[¶ 4] Stewart testified on cross-examination: (1) he could not "remember everything up to the point of having the accident"; (2) "I remember parts of it. I guess I don't remember the time of the accident. But there's parts I don't remember, you know, after the accident or before the accident too"; (3) the only drink he remembered was the one with dinner; (4) he did not remember talking to his father after the accident, did not "remember talking to the police at all"; and did not remember talking to his brother or to Emergency Medical Technician Bierman at the accident scene; and (5) when asked, "What do you remember in the hospital"

Stewart replied, "I remember they wouldn't leave me alone."

[¶ 5] The prosecutor offered three exhibits showing prior felony convictions of Stewart: (1) a December 30, 1991, judgment and order deferring imposition of sentence on a plea of guilty to unauthorized use of a vehicle, a class C felony; (2) a September 30, 1992, criminal judgment and commitment entered upon a plea of guilty to unlawful possession of a firearm, a class C felony; and (3) a March 29, 1996, criminal judgment and commitment upon a plea to reckless endangerment, a class C felony. The exhibits showed the sentences Stewart received, but did not disclose the underlying facts of the offenses.

[¶ 6] Rule 609, N.D.R.Ev., which was taken from the Uniform Rules of Evidence (1974), provides, in part:

(a) General Rule. For the purpose of attacking the credibility of a witness, (i) evidence that a witness other than an accused has been convicted of a crime must be admitted, subject to Rule 403, if the crime was punishable by ·death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime must be admitted if the court determines that the probative value of admitting that evidence outweighs its prejudicial effect to the accused; and (ii) evidence that any witness has been convicted of a crime must be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of conviction or of the release of the witness from any confinement imposed for that conviction, whichever is the later date unless the witness is still in confinement for that conviction.

Under N.D.C.C. § 12.1–32–01, felonies are offenses punishable by a maximum imprisonment in excess of one year. Thus, under N.D.R.Ev. 609(a)(i), for the purpose of attacking the credibility of a testifying accused, evidence that the accused has been convicted of a felony that meets the time limit of subdivision (b) "must be admitted if the court determines that the probative value of admitting that evidence outweighs its prejudicial effect." It has not been argued Stewart's convictions involved dishonesty or false statement under N.D.R.Ev. 609(a)(ii).

[¶ 7] "[I]nherent in Rule 609(a) is an acknowledgment that prior convictions are probative of a witness's credibility." *State v. Randall*, 2002 ND 16, ¶ 6, 639 N.W.2d 439; *see also State v. Lloyd*, 345 N.W.2d 240, 247 (Minn.1984) ("Underlying Rule 609 is the principle that impeachment by a prior conviction assists the jury to judge better the credibility of a witness by affording it the opportunity to view that person as a whole."). However, when dealing with the impeachment of a testifying defendant, the mere fact a prior conviction may have probative value does not automatically permit its use to impeach the defendant. When applied to the accused, Rule 609(a)(i) imposes a requirement that the evidence be admitted only if its probative value outweighs its prejudicial effect. As we have noted, Rule 609(a)(i) includes a special balancing ·test that "only applies to ·a criminal defendant because a criminal defendant faces the unique risk that juries will use prior convictions as evidence of the defendant's propensity to commit crime, rather than considering the convictions for impeachment purposes." *Randall*, 2002 ND 16, ¶ 13, 639 N.W.2d 439.

716

[¶ 8] One of the factors to be considered in applying this special balancing test is the similarity between the prior crime and the charged crime. *State v. Murchison*, 541 N.W.2d 435, 442 (N.D. 1995). We have previously explained that, when dealing with the impeachment of defendants, trial courts must be particularly careful about admitting prior convictions that are similar to the offense charged because of the potential prejudice that may result. *See State v. Eugene*, 536 N.W.2d 692, 695 (N.D.1995). Prior convictions similar to the charged crime should be admitted sparingly, while dissimilarity favors admission. 4 J. McLaughlin, *Weinstein's Federal Evidence* § 609.05[3][d] (2d ed.2002). If the prior conviction is similar to the crime charged, there is a heightened danger the jury will use the evidence not only for impeachment purposes, but also as evidence of the defendant's propensity to commit crime. *Eugene*, at 696. The Fourth Circuit explained the danger facing the accused:

> Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged. The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all.

*United States v. Sanders*, 964 F.2d 295, 297–98 (4th Cir.1992) (quoting *United States v. Beahm*, 664 F.2d 414, 418–19 (4th Cir.1981)).

[¶ 9] "[A]ppellate courts are reluctant to reverse a determination of admissibility" and "generally affirm the trial court's determination as long as there is some indication that the trial court exercised its discretion by weighing the probative value of the prior conviction against its prejudicial effect." 4 J. McLaughlin, *Weinstein's Federal Evidence*, at § 609.23. Among the factors for a trial court to consider in weighing the probative value of a prior felony conviction and its prejudicial effect are impeachment value of the prior crime, the time of the conviction and the witness's subsequent history, similarity between the prior crime and the charged crime, importance of the defendant's testimony, and the centrality of the credibility issue. *State v. Murchison*, 541 N.W.2d 435, 442 (N.D.1995). The factors were drawn from *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.1976). *State v. Fuller*, 379 N.W.2d 289, 290 (N.D.1985). "We review a trial court's ruling under N.D.R.Ev. 609 under the abuse of discretion standard." *Randall*, 2002 ND 16, ¶ 5, 639 N.W.2d 439. "A trial court abuses its discretion if the record does not 'show that the trial court meaningfully or appropriately considered the relevant factors' when it weighed the prior conviction's probative value and prejudicial effect." *Murchison*, at 442. "Although we prefer the trial court to articulate expressly how it balanced the relevant factors, it is often enough for the court to hold a brief hearing and to make an explicit finding on the record that demonstrates the trial court did not just apply NDREv 609(a)(i) mechanically." *Id.*

[¶ 10] In assessing probative value under *Murchison* there are several practical considerations a trial court might take into account. "Although Rule 609(a)(1) addresses convictions for crimes that do not involve dishonesty or false statement, some felonies are more related to veracity than are others.... Thus, crimes of violence generally have limited

probative value concerning the witness's credibility." 4 J. McLaughlin, *Weinstein's Federal Evidence*, at § 609.05[3][b]. "The probative value of a conviction decreases as its age increases." *Id.* at 609.05[3][c]. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Id.* at 609.05[3][f].

▆▆ [¶ 11] Stewart's credibility was in issue. Stewart testified "I guess I don't remember the time of the accident. But there's parts I don't remember, you know, after the accident or before the accident too." Stewart testified he did not remember talking to his father after the accident. He testified "I remember they wouldn't leave me alone" at the hospital, he did not "remember talking to the police at all"; he did not remember talking to his brother Mitch; he did not "remember the [Emergency Medical Technician], Ms. Bierman"; and he did not remember what happened "[j]ust before the accident occurred." Stewart testified he could only recall having one alcoholic drink, while a number of other witnesses testified to conduct consistent with being under the influence of alcohol. Dr. Peter Buzas testified he treated Stewart on October 14, 2000, and diagnosed him with a concussion, based upon Stewart's reporting. Dr. Buzas testified Stewart's neurological exam was normal and a concussion may cause emotional outbursts, belligerence or aggressive behavior. On the other hand, Dr. Patrick Evans, who treated Stewart at the hospital the night of the accident, testified Stewart's actions that night were not an indication of a concussion.

▆▆ [¶ 12] The trial court and counsel discussed the exhibits showing the prior convictions outside the presence of the jury. As in *State v. Bohe*, 447 N.W.2d 277, 281 (N.D.1989), "[o]ur review of the record indicates that the trial court's ruling was made pursuant to a hearing on the record out of the jury's presence." Counsel agreed the burden was on the prosecution to show the probative value of Stewart's prior convictions exceeded their prejudicial effect. As in *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.1976), "[t]he record before the judge ... consisted of argument by the parties over" the "prejudicial effect against the probative value of the evidence." The trial court was told the time when the prior convictions occurred— 1991, 1992, and 1996, the nature of the prior crimes, and their similarity to or dissimilarity from the charged crimes. The court was presented with arguments about the impeachment value of the prior crimes, and the centrality or not of Stewart's credibility. The court was presented with information and argument about factors this Court has said should be considered in weighing the probative value of a prior felony conviction and its prejudicial effect. A trial court is presumed to have done its duty and properly considered and weighed relevant information supplied for its consideration. *Olson v. Olson*, 2000 ND 120, ¶ 7, 611 N.W.2d 892.

[¶ 13] The trial court said it reviewed the rule, commentary, and caselaw, said counsel ably indicated the issues it needed to address, specifically mentioned the times of the convictions, mentioned Stewart's memory loss and his defense of a possible mechanical failure, and said Stewart's credibility was in issue. It is clear the court appropriately considered the factors involved in weighing the probative value of the prior convictions and their prejudicial effect. We conclude the trial court did " 'provide an adequate explanation for us to conclude it appropriately exercised its discretion' " in admitting Stewart's prior felony convictions. *Murchison*, 541 N.W.2d at 442 (quoting *State v. Eugene*, 536 N.W.2d 692, 696 (N.D.1995)).

[¶ 14] We conclude the trial court did not abuse its discretion in admitting Stewart's prior convictions into evidence for impeachment under N.D.R.Ev. 609.

### III

[¶ 15] Stewart contends there was insufficient evidence he was under the influence of alcohol when he was driving.

[¶ 16] We recently reiterated our standard of review of a challenge to the sufficiency of the evidence:

> This Court "review[s] a challenge to the sufficiency of the evidence by drawing all inferences in favor of the verdict." *City of Jamestown v. Neumiller*, 2000 ND 11, ¶ 5, 604 N.W.2d 441. "Reversal is warranted only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *Id.*

*City of Grand Forks v. Thong*, 2002 ND 48, ¶ 18, 640 N.W.2d 721.

[¶ 17] Deputy Sheriff Greenwood testified: (1) Stewart had, "in my opinion, been drinking a lot"; (2) there was a very strong odor of alcohol on Stewart; (3) Stewart was agitated; (4) when Greenwood asked who was driving the vehicle, Stewart "said it wasn't him. He was too drunk to drive"; (5) at the hospital, Stewart was "sometimes loud, hard to understand sometimes," and "wasn't cooperating"; and (6) in his opinion, Stewart "was under the influence of alcohol" that night.

[¶ 18] Emergency Medical Technician Bierman testified: (1) Stewart "was intensely intoxicated"; (2) "There was a strong odor of alcohol on John"; (3) "His eyes were glassy"; (4) "I'm quite certain he was intoxicated"; and (4) at the hospital, Stewart "got quite agitated and got quite loud and verbal."

[¶ 19] Darren Henry, Deputy Sheriff, testified that at the hospital: (1) "Mr. Stewart's attitude that night was very belligerent, loud, argumentative, refused to cooperate basically"; (2) Dr. Evans asked him to remove Stewart; (3) there was "a very strong odor" of alcohol on Stewart and he "had bloodshot eyes"; and (4) in his opinion, Stewart "was under the influence" of alcohol.

[¶ 20] Sheriff Watson testified: (1) at the emergency room, he asked Stewart if he had been driving and Stewart said he was too drunk to drive; (2) he detected an odor of alcohol on Stewart; (3) he knew Stewart from before; and (4) he believed Stewart was under the influence of alcohol.

[¶ 21] Dr. Patrick Evans testified that at the hospital after the accident (1) Stewart "became very belligerent" and "made threatening gestures"; (2) "I asked him as part of his medical history, whether he had been drinking or taking any drugs. He indicated to me that he had drank a lot of beer and whiskey, but no drugs"; and (3)

> In terms of my medical experience, looking, observing the patient's physical condition, the smell of alcohol mixed with oral contents, which has a very characteristic smell ... and the disinhibited sort of behavior he was exhibiting, including telling me that he had drank alcohol, my opinion was that he was in fact intoxicated with alcohol.

[¶ 22] In light of that evidence, and drawing all inferences in favor of the verdict, we are unable to conclude "no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *City of Grand Forks v. Thong*, 2002 ND 48, ¶ 18, 640 N.W.2d 721. Thus, we hold there was sufficient evidence Stewart was under the influence of alcohol when he was driving on October 10, 2000.

IV

[¶ 23]  The judgments are affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.